(No. 35248.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EARL MATTHEWS, Plaintiff in Error.

*Opinion filed November 18, 1959—Rehearing denied Jan. 18, 1960.*

HAROLD M. TYLER, ERNEST LA FONTANT, CLINTON O. SIMS, JULIUS LUCIUS ECHELES, and FRANK W. OLIVER, all of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY, and EDWIN A. STRUGALA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The defendant, Earl Matthews, was convicted of the crime of possession of narcotic drugs in the criminal court of Cook County and has sued out a writ of error from this court to review the judgment of conviction.

Two principal assignments of error are raised in this court. First, it is contended that defendant's written statement was improperly admitted in evidence. Second, it is contended that the evidence was insufficient to establish that defendant was guilty of the crime of unlawfully possessing narcotic drugs. Prior to trial the defendant filed a motion to suppress the written statement alleging that it had been obtained by promises on the part of certain police officers to grant immunity to one Veda Mitchell. A hearing was held upon this motion prior to trial. At that hearing officer James Bryson testified that, acting under the authority of a search warrant, he searched the apartment of one Veda Mitchell and found a large quantity of heroin in a suitcase which was in the apartment. The suitcase also contained an automobile title certificate bearing defendant's name and address. Bryson placed Mrs. Mitchell under arrest and detailed officer Thomas Bingham to remain with her

while Bryson and officer Charles Wilson went to defendant's hotel looking for him. They could not find defendant and called back to the Mitchell apartment. Officer Bingham told Bryson on the phone that defendant had called the apartment and told Bingham that he was coming in to give himself up. Bryson and Wilson then went back to the apartment and a few minutes later defendant called on the telephone. Bryson testified that he then told defendant that they had found the drugs and that they would secure a warrant for defendant's arrest. Defendant told Bryson that that would not be necessary and that he would come on in. According to Bryson defendant then said, "Veda Mitchell doesn't know anything about this dope at all. All of it belongs to me. I want to leave her there so she can take care of the kids." Bryson told Matthews that he thought that could be arranged. After the telephone conversation with Matthews, Bryson called his superior officer and told him the circumstances of the arrest and was directed to bring Mrs. Mitchell in and put a technical charge on her. Bryson testified that defendant arrived at the apartment a short time later and they all went down to headquarters where he took a written statement from defendant. He was asked on direct examination whether he at any time made any promises of immunity or promises of any kind to defendant and he replied that he had not. He was asked on cross-examination whether defendant told him that he would take full responsibility if Bryson would let Mrs. Mitchell go, and Bryson replied that defendant had made such a statement, although not in those exact words. He also was asked on cross-examination whether he had testified at a preliminary hearing that defendant had told him that he would admit the ownership of the drugs if Bryson would let Mrs. Mitchell go. Bryson replied that he had so testified at the preliminary hearing. It was also brought out on cross-examination that before taking the written statement from defendant at the station he told defendant that he was not

going to charge Mrs. Mitchell with possession of narcotics although it was necessary to hold her on a technical disorderly conduct charge.

Officer Bingham testified that neither he nor anyone in his presence ever made any promises to the defendant. He testified on cross-examination that when Matthews came to the Mitchell apartment after the conversation with Bryson, Bryson asked defendant whether the narcotics belonged to him and defendant replied that they did. Officer Bingham testified that he did not hear any conversation about letting Mrs. Mitchell go.

Officer Wilson on direct examination testified that he never heard anyone make any promises to defendant. He testified that when Matthews arrived at the apartment he told Bryson that if Bryson would let Mrs. Mitchell go he would take full responsibility.

Officer Bryson was then recalled as a witness and the trial judge asked him whether at any time before the written statement was given, Bryson told Matthews that Mrs. Mitchell would not be charged with the crime of the possession of narcotics. Bryson replied that those were not the exact words but that he told defendant something like that.

Mrs. Mitchell also testified at the hearing on the motion. According to her, Bryson told defendant on the telephone that if defendant would surrender himself he would not arrest Mrs. Mitchell. She also testified that when defendant arrived at the apartment after the telephone call Bryson told him that he would have to take Mrs. Mitchell down town and that defendant then said that it was his understanding that if he came in voluntarily the police would not arrest Mrs. Mitchell. According to Mrs. Mitchell, Bryson then asked defendant whether he owned the suitcase and defendant told Bryson that he would assume all responsibility because he didn't want anything to happen to Mrs. Mitchell and that Bryson then assured him that nothing

would happen to her. She testified that she was present at the time the written statement was taken and that both Bryson and Bingham again assured defendant that nothing would happen to Mrs. Mitchell.

Defendant testified at the hearing that when he talked to Bryson on the phone Bryson told him that he was going to have to lock up Mrs. Mitchell and that defendant told him that that would not be necessary since he was sure that she hadn't done anything. He testified that when he arrived at the apartment he recognized the suitcase and admitted that it was his. He testified that Bryson told him that he had talked to his superior officer and that he would have to take Mrs. Mitchell down town but that nothing would happen to her. Defendant testified that he then said to Bryson, "I will assume full responsibility for everything wrong here if you will let Mrs. Mitchell go." He testified that before signing the statement he said that he would sign it if they would leave Mrs. Mitchell out of it and that he was assured that the police would do all that they could to leave her out.

Following this hearing the judge denied the motion to suppress and admitted the statement in evidence. We are of the opinion that this ruling was correct. Officer Bryson testified that when he first talked with defendant on the phone the defendant volunteered the statement that Mrs. Mitchell did not know anything about the dope and that all of it belonged to defendant. Repeated questioning on cross-examination only served to bring out this fact more clearly. Officer Bingham testified that he heard defendant admit that the suitcase and the narcotics were his property and testified that he did not hear any conversation about letting Mrs. Mitchell go. Officer Wilson testified that he heard defendant tell Bryson that if Bryson would let Mrs. Mitchell go he would take full responsibility. From all of this testimony it is apparent that from the start defendant admitted owning the narcotics and assumed full responsibility for them. The

several conversations with respect to letting Mrs. Mitchell go were all coupled with admissions by defendant of his ownership and responsibility for the narcotics. It is quite clear from the record that defendant's repeated admissions were not induced by any promise on the part of the police officers to grant immunity. The very suggestion of granting immunity to her was initiated by defendant, only after he had admitted his ownership of the narcotics. The defendant having already on several occasions, both on the telephone and at the Mitchell apartment, admitted that he was the owner of the narcotics, the trial judge was fully justified in holding that his written statement, which did little more than confirm his several oral admissions, was not induced by any promises made by the police.

We turn now to defendant's second contention. He argues that there is no proof in the record that he was in possession of the narcotics, but only that he was the owner thereof. It is argued that both according to the dictionary definition of "possession" and the legal meaning thereof, that there is a great distinction between "possession" and "ownership." It is argued that a person may possess something without being the owner and, conversely, may own something without possessing it. As an abstract legal proposition this argument is correct, for there are numerous instances in the law and in everyday life where the ownership and possession of personal property are in different persons. However, in our opinion this abstract proposition has no application here. In *People* v. *Mack*, 12 Ill.2d 151, we held that in order to support a conviction of the crime of possession of narcotic drugs the State must establish knowledge on the part of the defendant of the presence of the narcotics and must also establish that the narcotics were in the immediate and exclusive control of the defendant. There is in the present case abundant evidence of defendant's knowledge, for he immediately admitted to Bryson on the telephone that the narcotics belonged to him and

repeatedly stated that he would assume all of the responsibility. Furthermore, there is not even any denial that defendant had knowledge of the existence of the narcotics, for the entire defense is predicated upon an admission of title to the narcotics but a denial of their possession. The element of control over the narcotics by the defendant is also present here. It is clear that actual physical, personal possession is not required and that possession may be constructive as well as actual. (*People* v. *Mack,* 12 Ill.2d 162.) In the *Mack case* the narcotics were found in an apartment which had been rented to the defendant. The apartment was not occupied and the defendant lived with his brother. The defendant was seen entering and leaving the apartment on several occasions. Persons other than the defendant were likewise seen entering and leaving the apartment in question and there was a possibility that the janitor of the apartment building had a key to the apartment. We held in that case that, in spite of the fact that other persons had access to the apartment, the narcotics found therein were in the exclusive possession and control of the defendant. In the present case defendant repeatedly insisted that Mrs. Mitchell did not know anything about the narcotics and insisted that they were his and that he would take full responsibility for them. Mrs. Mitchell testified at the trial that the suitcase containing the narcotics was delivered by a delivery man who said that he had a suitcase for Earl Matthews and that she never had a chance to talk to Matthews about it before the police officers arrived. Mrs. Mitchell did not have the keys to the suitcase and did not know what was in it. In defendant's written statement which was admitted in evidence he repeated his statement that the narcotics belonged to him and not to Mrs. Mitchell and stated that he kept the narcotics there so that no one would hold him up and try to take them away from him. Under these circumstances it is impossible for us to agree with defendant's contention that he did not have possession

of the narcotics. Mrs. Mitchell did not know what the suitcase contained, did not have a key to the suitcase and had not even talked to Matthews about it from the time it was delivered until the time the narcotics were found by the police. Defendant repeatedly stated that he took full responsibility for the narcotics and admitted that they were kept in Mrs. Mitchell's apartment so that they would not be stolen from him. These facts are sufficient to establish that defendant had constructive possession of the drugs.

Defendant relies upon *United States* v. *Landry*, (7th cir.) 257 F.2d 425, in which the Court of Appeals for the Seventh Circuit held that proof of ownership was insufficient to establish proof of possession. In that case the defendant was arrested in an apartment occupied by one Dolores Dandridge and other members of her family. At the time of the arrest only defendant and Dolores were present. Defendant told the officers that he had no narcotics and the officers searched Dolores and the apartment and found some narcotics in her pocket and some in a medicine jar in her bedroom. Defendant admitted that these narcotics belonged to him but Dolores told the officers that she was keeping the narcotics because if she let defendant have them he would use them all at once. The court held that under these circumstances the actual possession of the narcotics was in Dolores and not the defendant. There is one marked difference between the *Landry case* and the present case. In that case Dolores knowingly had possession of the narcotics and was deliberately keeping them out of defendant's possession and control so that he would not be tempted to use them. In the present case all of the evidence shows that Mrs. Mitchell had no knowledge that the suitcase which was delivered to her apartment contained narcotics and she was not attempting to keep the drugs out of defendant's possession. In the absence of knowledge on her part, she can not be said to have possession. This distinction is sufficient to make the holding in *Landry* inapplicable here.

One further point is raised in defendant's brief. When Mrs. Mitchell was questioned on direct examination, there was no mention of any conversation between the police officers and Mrs. Mitchell's daughter. On cross-examination, she was asked whether there was any conversation between the police and her child and she replied, "not to my knowledge there wasn't." She was then asked whether it was a fact that her child told the police officers that Matthews brought the suitcase to the apartment and she said, "no, sir, my kid couldn't have told the police officer that." In rebuttal, Bryson testified, over objection, that he had asked the little girl who brought the suitcase and she told him that a man named Earl Matthews had brought it. He further testified that the little girl told him that Matthews came to the apartment almost every day. The trial judge, in ruling on an objection to this testimony stated, that, he thought it was offered to impeach Mrs. Mitchell's testimony and that it was admissible for that purpose. We are of the opinion that this testimony was improperly admitted. The question of whether Matthews brought the suitcase to Mrs. Mitchell's apartment was relevant and any competent evidence bearing upon that issue was admissible. However, the question of whether or not the police officers had a conversation with Mrs. Mitchell's daughter was irrelevant and incompetent, for anything said in that conversation was hearsay and inadmissible against the defendant. It is apparent that the only purpose of going into the matter on cross-examination of Mrs. Mitchell was to lay a supposed foundation for officer Bryson's rebuttal testimony. Cross-examination should be limited to matters brought out on direct examination and the practice of asking questions on irrelevant matters on cross-examination for the purpose of contradicting the answers is improper and has been condemned. (*People* v. *Kirkwood,* 17 Ill.2d 23; *People* v. *Simmons,* 274 Ill. 528.) However, the present case was tried before the court without a jury

and the trial judge admitted the testimony for a limited purpose only. While it was error to admit Bryson's testimony as to the conversation with the child, we are of the opinion that in view of the other evidence of guilt which appears in the record, that the error is not such as to require reversal.

Our review of the record satisfies us that defendant's written statement was properly admitted in evidence, that there was sufficient evidence of defendant's guilt and that defendant received a fair trial, free from prejudicial error. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*