THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES ANTHONY COVINGTON, Defendant-Appellant.

Fifth District   No. 80-185

Opinion filed January 12, 1981.

John H. Reid and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Martin N. Ashley and Christopher S. Carroll, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

The defendant was charged with unlawful use of weapons, possession of a firearm without an owner's identification card, and possession of a hypodermic syringe. After a jury trial in the Circuit Court of Madison County, he was convicted of the charges stemming from his possession of a handgun and acquitted of possession of the syringe. He appeals to this court, claiming that (1) the evidence failed to prove his possession of the gun beyond a reasonable doubt, (2) the trial court improperly denied his motion for substitution of judge, (3) judgment should not have been entered on both firearms counts, as they were based on a single act, and (4) the sentence imposed should not have been made to run consecutively with a possible future parole violation.

Evidence introduced at trial establishes that, on December 14, 1979, Officer Albrecht of the Alton Police Department was called to a Madison County Housing project to investigate an unauthorized tenancy. He met Barbara Martin, the manager of the project, who accompanied him to 258 Dooley Drive. As they approached the apartment, both of them heard loud music coming from inside. Martin knocked on the door, but no one answered. She opened the door with her pass key, and both she and Albrecht entered the living room.

The defendant was lying on a couch, and was alone in the living room. Immediately in front of the couch stood a table measuring four feet in length, two feet wide and 1½ feet high. On it were scattered various personal possessions, including, about two feet from the defendant's head, the gun and syringe in question. The grip was the part of the gun closest to the defendant.

When Martin and Albrecht entered the room, the defendant sat up, but did not reach for, or attempt to conceal the pistol. Instead, he called out that the police were there. By this time, Officer Albrecht had observed the gun (although Ms. Martin did not), and had picked it up and unloaded it. The defendant denied any knowledge of the gun.

Ben Jones then entered the living room from upstairs. His mother had rented the apartment at 258 Dooley, but had moved. Ben remained as a

squatter. When questioned by Officer Albrecht, he, too, denied any knowledge of the weapon. Officer Albrecht then arrested the defendant and Jones, although he did not arrest Bo Willie Jennings, who was later discovered upstairs.

Before he left the apartment, the defendant picked up his keys, which were on the opposite end of the table from the gun and syringe. The keys were on the side of the table closest to the couch, as were the gun and syringe. At trial, the defendant claimed that the only personal items which he had left on that table were the keys and a pair of handcuffs, found near the keys. None of the other objects on the table were ever identified as property of the defendant, Jones or Jennings.

At trial, both the defendant and Jones testified that Jones was the sole inhabitant of the apartment until several days before December 14, 1979, when the defendant and Jennings arrived, allegedly to help Jones move. Both men continued to assert that neither had any knowledge of the gun, but neither witness gave the identity of its owner.

■■ The defendant first requests this court to reverse his convictions because insufficient evidence was introduced to establish his control over the gun found in the apartment. He is correct when he states that his control over the weapon must be proved, but we do not agree that the jury should have rejected that proof at trial.

Evidence introduced by the defense suggests that when the defendant fell asleep on the couch at 8 a.m., the gun was not on the table. When Officer Albrecht arrived two hours later, he found the pistol on that table. Apparently, the defendant's version of the incident is that, in that two hour period, someone placed the gun on the table, within two feet of the defendant's head, the grip pointed toward him. The owner of the gun, according to defense witnesses, was neither the defendant nor Ben Jones, the semipermanent occupant of the apartment. It is, of course, implied that the gun belonged to Bo Willie Jennings.

■■ It is difficult to believe that Jennings who, like the defendant, was a guest in the Jones apartment, would have left his pistol downstairs next to the sleeping defendant rather than somewhere closer to himself. Furthermore, the claim that Jennings set the gun on the table between 8 a.m. and 10 a.m., while the defendant slept, makes this story even more improbable. We believe that there was sufficient evidence for the jury to have found that the defendant, who did not want to sleep with a gun about his person, placed it on the coffee table within his reach. Nor is the jury's verdict challenged by (1) the defendant's denial of ownership (*People v. Nunez* (1974), 24 Ill. App. 3d 163, 320 N.E.2d 462), (2) the presence of Jones and Jennings in the apartment (*Nunez; People v. Collier* (1974), 17 Ill. App. 3d 21, 307 N.E.2d 678 (abstract)), (3) the fact that the apartment was primarily occupied by Jones (*People v. Hester* (1980), 87 Ill. App. 3d

50, 409 N.E.2d 106), and (4) the location of the defendant's acknowledged personal belongings at the other end of the coffee table. The jury's verdict of guilt of unlawful use of weapons and possession of a firearm without an owner's identification card is supported by the evidence.

Second, the defendant contends that his case should have been heard by a different trial judge. On January 4, 1980, the defendant was arraigned before Judge Day. During these proceedings, Judge Day informed the defendant that "Mr. Hale will be the assistant State's Attorney in charge of the matter. It—this is an even numbered case, so it will be before Judge Mosele for trial—even numbered cases being assigned to him and odd numbered cases being assigned to me."

The defendant filed a *pro se* motion on February 4, 1980, to have the public defender appointed to represent him, and to replace his retained counsel. On February 13, William E. Brandt entered an appearance as counsel for the defendant. Brandt filed a "motion for change of venue" on February 21, alleging that "its [sic] defendant's firm belief that the above named Judge [Mosele] is prejudice [sic] against him and that he cannot procur a fair and impartial trial against said Judge," that "denial of said motion would seriously prejudice [sic] defendant's chances of prevailing at trial," and that "defendant has filed no prior motions for change of venue." That day, Judge Mosele entered an order denying the motion "because it was not filed within 10 days after it was placed on the trial docket of Judge Mosele."

Although it is not certain, the motion appears to request an automatic change of judge rather than substitution for cause. A motion for an automatic substitution of judges must be made within 10 days after the case has been placed on the trial call of a judge. (Ill. Rev. Stat. 1979, ch. 38, par. 114—5(a).) The record shows that this case was placed on Judge Mosele's call on January 31. The February 21 motion was thus untimely.

■■■ But, the defendant argues, several cases have stated that a motion for substitution should be considered timely if made at the "earliest practical moment." (*People v. Thomas* (1978), 58 Ill. App. 3d 460, 374 N.E.2d 795.) He urges us to find that the February 21 motion, filed within 10 days of the first appearance of his new attorney, was made at the earliest practical moment. We cannot make that finding, for, as the People state in their brief, the "earliest practical moment" actually means "within 10 days after the case has been placed on the call of the judge," or, if that is not possible, then "within 10 days after the defendant may be charged with knowledge of the assignment of a case to a judge." (*People v. Oatis* (1979), 69 Ill. App. 3d 736, 387 N.E.2d 1052.) Because the defendant was told at the arraignment that his case would be assigned to Judge Mosele, there is no reason to extend the time for his motion beyond 10 days after the actual assignment of the case to the Judge. The motion was not timely.

■ If the motion could be interpreted as a motion for substitution for cause, it is defective for different reasons. The motion did not suggest any reason for the alleged prejudice of Judge Mosele, nor was it supported by an affidavit. It was thus properly denied. Ill. Rev. Stat. 1979, ch. 38, par. 114—5(c); *People v. Ganci* (1978), 57 Ill. App. 3d 234, 372 N.E.2d 1077; *People v. Van Pelt* (1974), 18 Ill. App. 3d 1087, 311 N.E.2d 184.

As his third assignment of error, the defendant maintains that he cannot be convicted of both possession of a firearm without an identification card, and felonious unlawful use of weapons based on the possession of that firearm within five years of his release from the penitentiary. He argues that both offenses are "carved from the same physical act," namely his possession of the gun. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

■ It is true that, as a logical matter, both convictions resulted from the possession of the pistol. But this alone does not require that one of the convictions be reversed. As has been held in *People v. Perry* (1976), 38 Ill. App. 3d 81, 347 N.E.2d 340, convictions for both unlawful use of weapons based on possession and possession of a firearm without an owner's identification card may stand together. The court in *Perry* stated that the offenses of carrying a concealed weapon and possession of a firearm without identification require a different act and a different mental state. That characterization applies to the offenses committed here as well. These differences between the two possessory offenses show that they are not in fact "carved from the same physical act" and that the defendant was properly convicted of both crimes.

Finally, the defendant states that the sentence imposed on him is too vague, in that the trial court stated that the defendant's five year prison term "will run consecutive to any parole violation." However, the sentencing order said that defendant's sentences on both convictions "are to run consecutively with any sentence imposed for parole violation in case 75-CF-95." This type of sentence has been upheld in *People v. Starnes* (1980), 88 Ill. App. 3d 1141, 411 N.E.2d 125, and we uphold it here.

Finding that oral argument would be of no assistance to the court in reaching its conclusion, we have taken the case under advisement without oral argument pursuant to Supreme Court Rule 352(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 352(a)), and we affirm the judgment of the Circuit Court of Madison County.

Affirmed.

HARRISON and JONES, JJ., concur.