THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN MOORE WILLIAMS, Defendant-Appellant.

Third District  No. 80-536

Opinion filed July 31, 1981.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin, James K. Horstman, and Robert J. Biderman, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, John Moore Williams, appeals from his conviction following a jury trial in the Circuit Court of Peoria County for unlawful use of a deadly weapon. He received a 5-year term of imprisonment. Three issues are presented for review: (1) whether the State proved the defendant's possession of the weapon beyond a reasonable doubt; (2) whether the court erred in failing to give both paragraphs of the circumstantial evidence instruction as tendered by the defendant; and (3) whether comments made by the prosecutor were unsupported by the evidence. We affirm.

The defendant was originally charged by indictment with several counts of pandering, intimidation, and unlawful use of weapons. The jury acquitted the defendant of all charges but the unlawful weapons count.

The basis of the unlawful-weapons count came from a lawful search of the premises located at 2130 N.E. Jefferson Street, Peoria, Illinois. Police recovered a double-barreled 16-gauge shotgun hidden under a mattress located in a second-floor bedroom. The second floor of the premises was arranged as a two-bedroom apartment, although it had no shower or stove. The first floor contained an office which was being remodeled. The defendant, who was not present in the apartment at the time of the seizure, was later arrested elsewhere. The officers dusted the gun in an attempt to lift any latent fingerprints, but they found none. The length of the gun barrel was 14½ inches. Police also found in the apartment a letter addressed to the defendant at 905 West First Street. The letter was included in a bundle of approximately 100 letters addressed to other persons.

At trial, two alleged prostitutes testified for the State. The first, Pamela Thornton, stated she lived with Alice Weber and the defendant at 905 West First Street in March and April 1980. At the end of April, she, Weber, and the defendant moved into the upstairs apartment of 2130 Jefferson Street. Thornton and Weber worked as prostitutes in that building for approximately two weeks. Several times they took their clients into the apartment where the shotgun was located. Thornton observed the defendant handle the gun 10 or 11 times while at the Jefferson Street apartment. He kept the gun under a mattress in his bedroom.

Alice Weber, a 16-year-old prostitute, also saw the defendant handle the shotgun four or five times at the Jefferson Street apartment. She also

admitted to handling it herself, along with Thornton and several other persons. Weber did not know who owned the gun. She only knew the defendant brought it home with him one day. According to her, the gun was kept either behind a couch or under the defendant's mattress.

The defendant offered the testimony of William Hensley, an agent of the lessor, who rented the building located at 2130 Jefferson Street to the Jerome Armstead Enterprises on May 1, 1980. A few days later, Hensley met with the defendant to discuss removing some partitions found on the first floor. According to Hensley, the second floor contained offices.

The defendant also adduced the testimony of Kelley Williams, the defendant's estranged wife. She told the court the defendant did not own the gun. She also stated she told Thornton to go to the police and falsify the story that the defendant forced them to become prostitutes. Thornton consented to the idea because she disliked the defendant. At that same time, however, Williams admitted she and Thornton worked as prostitutes at the First Street address, but kept that fact a secret from the defendant.

During the instructions conference, defense counsel objected to the State's instruction concerning circumstantial evidence, arguing that both paragraphs of Illinois Pattern Instructions, Criminal, No. 3.02 (1968) (hereinafter cited as IPI Criminal) be given. The court gave the State's instructions which included only the first paragraph.

Following closing arguments, the jury retired to deliberate. Several hours later, the court brought the jury into the courtroom and instructed them further about their inability to reach a verdict in accordance with *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601. Nearly five hours later, the jury returned a verdict of guilty on the unlawful use of weapons charge and acquitted him of the other charges.

The defendant first contends the State failed to prove the defendant's possession of the shotgun beyond a reasonable doubt. Illinois law is well established that possession need not be proved by actual physical possession; an accused may be shown to have possessed the contraband in question by establishing that the contraband was subject to his dominion and control. See also Ill. Rev. Stat. 1979, ch. 38, par. 4—2; *People v. Matthews* (1959), 18 Ill. 2d 164, 163 N.E.2d 469.

■■ The doctrine of constructive possession, usually found in narcotics cases but equally applicable to possession of unlawful weapons, requires the State to establish the defendant's knowledge of the presence of contraband and his immediate and exclusive control thereof. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) In *Nettles*, the court further declared:

> "* * * where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be

sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt." *People v. Nettles* (1961), 23 Ill. 2d 306, 308-09, 178 N.E.2d 361, 363.

To support his contention, the defendant first submits that the evidence presented was insufficient to establish the defendant's control over the premises and that, as a consequence, the normally permissible inference of his possession cannot be made. Second, he argues that, assuming he had control of the premises, the testimony failed to demonstrate that such control was exclusive.

■■ Contrary to the defendant's contention, whether he had a legal interest in the apartment is not determinative of whether he exercised sufficient dominion and control over the premises to reasonably infer his possession of the weapon. Although the defendant may not have been more than a squatter on the premises, the evidence was clear and uncontradicted that he lived there for two weeks. Constructive possession does not require proof of the defendant's ownership or other legal interest in the premises in which the contraband was discovered. (See *People v. Covington* (1981), 92 Ill. App. 3d 598, 416 N.E.2d 61; and *People v. O'Neal* (1975), 35 Ill. App. 3d 89, 341 N.E.2d 36.) Proof that others shared the quarters, or that one other than the defendant was the primary occupant of the premises, is insufficient to overcome a finding that the defendant exercised control and dominion over the premises.

For this reason, the three cases relied upon by the defendant are distinguishable. In *People v. Pugh* (1967), 36 Ill. 2d 435, 223 N.E.2d 115, the supreme court reversed the defendant's conviction for possession of narcotics because there was no evidence, other than his presence in the apartment at the time the contraband was seized, to infer that he lived in the apartment. The State adduced no evidence to show that he kept any personal effects there or that he was even a frequent visitor to the apartment. In *People v. Bedford* (1966), 78 Ill. App. 2d 308, 223 N.E.2d 290, the court reversed the defendant's conviction for possession of narcotics, finding that despite his knowledge of the presence of the narcotics seized, no constructive possession occurred. The defendant did not reside at the premises, he did not frequently visit there, he had no key to the premises, and the envelope containing the drugs was marked with another person's name. In *People v. Zentz* (1975), 26 Ill. App. 3d 265, 325 N.E.2d 40, this court reversed the defendant's conviction for unlawful possession of a shotgun. The police recovered the weapon from a vehicle believed to be the defendant's. The only facts connecting the defendant with the car were some papers apparently belonging to him and reports that he had driven a similar car sometime earlier.

■■ Contrary to each of these cases, the uncontradicted evidence in the instant case clearly shows the defendant resided in the dwelling at 2130 Jefferson Street for a period of at least two weeks. Moreover, the defendant's connection with the weapon was more than one of merely being aware of its existence; here, he brought it to the apartment, handled it often (albeit not exclusively), determined where it was to be kept, and safeguarded it by sleeping over it. Accordingly, the State sufficiently established the defendant's possession of the premises to reasonably infer his knowledge and possession of the weapon.

■■ Likewise, we disagree with the defendant's contention that the testimony reveals "other circumstances" which create a reasonable doubt of the defendant's guilt and which do not permit the inference that a gun found in the premises under the defendant's control was possessed by the defendant. Specifically, he argues that because several persons handled the weapon, he did not exclusively control and thus possess the weapon. The law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361.) When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of joint possession. To hold otherwise would enable persons to escape criminal liability for possession of contraband by the simple expediency of inviting others to participate in the criminal enterprise.

We find the State did prove the defendant's possession of the sawed-off shotgun beyond a reasonable doubt. He resided in the apartment, and he kept the gun hidden under his bed. He also frequently handled the gun and decided where it was to be stored. Given such evidence and the absence of other facts which could support a reasonable theory of innocence, the jury did not err in finding the defendant guilty of unlawful use of weapons. ·

■■ The defendant next contends the circuit court erred in refusing to give the defendant's instruction to the jury on the matter of circumstantial evidence. When the State relies upon circumstantial evidence, the proof must be of a conclusive nature and tendency to produce with reasonable certainty that the defendant and no one else committed the crime and to exclude every other reasonable hypothesis of innocence. *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.

Here, in attempting to establish constructive possession by way of circumstantial evidence, the State submitted the first paragraph of IPI Criminal No. 3.02, which provides:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend

to show the guilt or innocence of [the] [a] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict."

The defendant's rejected instruction sought to include the second paragraph of IPI Criminal No. 3.02, which reads, "[y]ou should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence." The Committee Comments to the instruction direct that the second paragraph is to be given only when evidence is entirely circumstantial. Here, the defendant argues that the court committed reversible error when it failed to give the second paragraph because the evidence concerning the defendant's unlawful use of weapons was entirely circumstantial.

■■ The defendant argues that "obviously" the theory of constructive possession is based upon circumstantial evidence and thus concludes that the entire cause must be founded upon circumstantial evidence. Although the distinction between direct and circumstantial evidence for certain offenses is often unclear (see generally *People v. Minish* (1974), 19 Ill. App. 3d 603, 608, 312 N.E.2d 49, 53 (Stouder, J., dissenting)), portions of the State's case consisted of evidence from which the jury had only to infer the truth of the fact asserted. (See McCormick Handbook of the Law of Evidence §185, at 435-36 (1972).) Constructive possession is but one element, albeit an essential element, for the offense of unlawful use of weapons. Another essential element, the existence of a deadly weapon (see Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(7)), was proved in the case at bar by direct evidence when the State seized and presented at trial the sawed-off shotgun. Thus, the proof of the defendant's guilt was not based entirely upon circumstantial evidence. Accordingly, the circuit court made no reversible error by giving only the first paragraph of IPI Criminal No. 3.02.

■■ Last, the defendant urges this court to reverse his conviction and remand for a new trial on the ground that the prosecutor's comments at the beginning and end of the trial were never supported by proof. During the State's opening statement, the assistant State's Attorney said the weapon was found exactly where Thornton and Weber said it would be located in their statements to the officers. The State then failed to adduce testimony at trial to support this assertion, and the prosecutor twice repeated the assertion during closing argument, without defense counsel objecting at trial or by post-trial petition. By failing to intercede an objection to the prosecutor's comments, the defendant has waived the alleged errors for the purpose of appeal. (See *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306.) Even assuming, *arguendo*, that no waiver took place, the prosecutor's comments failed to constitute reversible error because the jury could have reasonably inferred such an assertion from

the record. Although the State adduced no direct testimony concerning whether Thornton or Weber told the officers about the location of the weapon, both Thornton and Weber testified they knew where the defendant kept the shotgun. Moreover, both gave a written statement to the officers, which the police in turn used to obtain a search warrant. From the foregoing evidence, the jury could have reasonably inferred that, because the witnesses knew the exact location of the gun, they informed the police of the gun's location when their statements were given.

For the foregoing reasons, we affirm the defendant's judgment of conviction and sentence entered in the Circuit Court of Peoria County.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I respectfully disagree with the result reached by my colleagues. In my opinion the defendant should be granted a new trial because the trial court erroneously and prejudicially refused to give the entire circumstantial evidence instruction.

Again we are faced with the question of what is direct evidence and what is circumstantial evidence. My views on the subject have been set forth in earlier decisions and will not be restated here. I would only reiterate that I think it should be the option of the defendant as to whether the entire instruction should be given or only the first part. By so doing we would avoid the thorny problem of trying to decide precisely whether "all" of the evidence is circumstantial.

In the instant case, where the proof depends entirely upon the application of the doctrine of constructive possession, it seems to me that almost by definition we are talking only of circumstantial evidence. The contraband was not discovered in the actual possession of the defendant. By their nature the elements of constructive possession, *i.e.*, control of the premises and knowledge of the presence of the contraband, were established wholly by circumstantial evidence. Indeed the principal issue from which the commission of the offense could be inferred, as pointed out by the majority, was whether the defendant lived on the premises. Obviously, living on the premises was not an element of the offense charged.

As the defendant's relation to the premises was sketchy and was established by the testimony of witnesses whose credibility in other respects was not accepted by the jury, the jury should have been given the full instruction, and the failure to do so constituted reversible error.