**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2604

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Charles A. Covington, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 18, 1997
Filed:

_____

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN and MAGILL,
Circuit Judges.

_____

MAGILL, Circuit Judge.

Charles Covington was convicted of one count of conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846 (1994), and one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (1994). Covington appeals his convictions and sentence, making several claims of error. We affirm the convictions but remand for resentencing.

## I.

In June 1996 Charles Covington and Floyd Woods, two Alton, Illinois, residents, agreed to travel to California to buy crack cocaine from a man Covington knew named "Tank," a former resident of Alton. Covington and Woods traveled with three associates, Jamescina Williams, Beverly Bryant, and Maurice Pittman.

The group flew to Las Vegas, Nevada, on June 24, 1996. The next day, the group took a bus to San Bernardino, California, where Woods and Covington met with Tank. Tank introduced them to an anonymous source, who sold them thirty ounces of crack cocaine. Woods then purchased a handgun from Tank for three ounces of the crack.

Because of the handgun, the group decided to return to Illinois via train. During the train ride, Covington put the crack cocaine in Williams's purse. When the group arrived in Kansas City, Missouri, on June 28, 1996, Kansas City police were performing a routine drug interdiction procedure at the train station. Covington, Woods, and their three associates, concerned about the police, left the train and scattered. Woods abandoned his gun in the lobby of the train station, and the gun was found by officers. Williams fled when she saw police officers and threw her purse in the bushes, but she was apprehended and 832.17 grams of crack cocaine was discovered in her purse. Although Covington was questioned at the train station, he was released and was not arrested until later.

During trial, both Williams and Woods testified against Covington for the government, describing the details of the group's trip to California to buy crack cocaine. The jury convicted Covington of possession with intent to distribute cocaine base and conspiracy to possess with intent to distribute cocaine base. Covington was sentenced as a career offender to 360 months imprisonment.

On appeal, Covington makes several challenges to his conviction and sentence.  Through counsel, Covington contends that (1) he was incorrectly sentenced as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1, (2) the evidence at his sentencing was insufficient to show that he possessed crack cocaine rather than another type of cocaine base, (3) there was insufficient evidence to convict him of conspiracy, (4) the court erred in giving a deliberate ignorance jury instruction, and (5) the court erred in denying a mistrial after witnesses spoke to each other in violation of Federal Rule of Evidence 615.  We consider these arguments in turn.[1]

## II.

Covington first contends that the district court erred by sentencing him as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1.  Covington argues that he was not imprisoned for two prior qualifying offenses within the fifteen-year period ending when he committed the instant offenses.  A district court's "determinations with respect to the offenses in a criminal history computation are factual determinations and are subject to a 'clearly erroneous' standard of review."  United States v. Lowe, 930 F.2d 645, 646-47 (8th Cir. 1991).

---

[1]We previously granted Covington leave to file a supplemental pro se brief. Although it is not usually our practice to consider pro se filings when a party is represented by counsel, see United States v. Blum, 65 F.3d 1436, 1443 n.2 (8th Cir. 1995), we have reviewed Covington's pro se brief, and find that its claims lack merit and do not warrant further discussion.  See 8th Cir. R. 47B.

A defendant qualifies as a career offender when being sentenced for a crime of violence or a controlled substance offense if the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (1995). The two prior felony convictions must each have "resulted in the defendant being incarcerated during any part of [the] fifteen-year period" ending when the defendant's instant offense commenced. U.S.S.G. § 4A1.2(e)(1) (1995); see

U.S.S.G. § 4B1.2, comment. (n.4) (1995) (instructing courts to apply U.S.S.G. § 4A1.2 to determine if an offense counts in the career offender calculation). If a defendant qualifies as a career offender, the defendant's offense level can be increased, and the defendant's criminal history category is increased to Category VI. In Covington's case, career offender qualification did not result in his offense level being increased, but resulted in an increase of his criminal history category from IV to VI.[2]

Because Covington commenced the instant offense in June 1996, he must have been incarcerated for two qualifying offenses between June 1981 and June 1996 to qualify as a career offender. The district court found that Covington qualified as a career offender based on two prior Illinois convictions. The first conviction was for an aggravated kidnaping committed by Covington in 1983 and is not challenged as a basis for career offender status. The second conviction was for a burglary committed by Covington in 1975. Covington was imprisoned for the burglary conviction beginning in March 1978, and was released on parole soon thereafter in September 1978. In December 1979, while on parole, Covington committed Illinois firearm offenses, and was again imprisoned.[3] In April 1980, an Illinois court sentenced Covington to five

---

[2]Thus, as a career offender with an offense level of 38, Covington's sentencing range was 360 months to life, rather than 324 months to 405 months if he had not qualified.

[3]The firearm offenses would not qualify Covington for career offender status because they are not considered to be "crimes of violence." See U.S.S.G. § 4B1.2, comment. (n.2) (1995).

years custody on the firearm offenses, and stated that the five-year sentence "will run consecutive to any [burglary] parole violation" sentence imposed. People v. Covington, 416 N.E.2d 61, 65 (Ill. App. Ct. 1981). The record does not indicate whether a recommitment sentence was ever imposed on Covington for his burglary parole violation. Covington was ultimately released from Illinois custody in October 1982--within the fifteen-year career offender period.

Covington's presentence report indicated that he was ultimately released in October 1982, but was unclear as to whether he was imprisoned for the burglary offense or the firearm offenses during the period between the December 1979 firearm arrest and his release. Covington objected to the presentence report, claiming that his return to prison was not a parole revocation for the burglary offense. <u>See</u> Objections to Presentence Investigation Report at 4. At the sentencing hearing, Covington's objection was made with more specificity:

> if the parole was revoked, there was no continuation of this burglary sentence. In other words, he was not sentenced or was not committed to continue the sentence for the burglary case. . . . The parole was revoked and he was sent to prison on the [firearm offenses].

Sentencing Tr. at 10. Despite these objections, the government did not introduce any evidence of any sentence ever being imposed on Covington for the burglary parole violation.[4] The district court found that Covington was imprisoned for the burglary recommitment after June 1981, and sentenced Covington as a career offender.

This Court has held that "[o]nce a defendant objects to a factual allegation in the presentence report, the

---

[4]The only evidence relevant to Covington's state sentence that was provided to either this Court or the district court was a page of a docket sheet relating to Covington's firearm convictions, provided by the government during oral argument before this Court. That docket sheet, which provides that his firearms sentence would be served consecutive to "any sentence imposed for" his burglary parole violation, is unhelpful in determining whether any sentence was actually imposed for the burglary parole revocation.

court must make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing."  United States v. Granados, 962 F.2d 767, 771 (8th Cir. 1992) (quotation and citation omitted).  If the court chooses to make a finding as to the factual allegation, "the government must introduce evidence sufficient to

convince the Court by a preponderance of the evidence that the fact in question exists." Id. at 771-72 (quotation and citation omitted). In this case, no evidence was introduced to confirm that Covington was imprisoned for burglary during the relevant period rather than for the firearm offenses. The conclusion of the presentence report that Covington was imprisoned until October 1982 did not provide the court with the required preponderance of evidence that Covington was imprisoned for burglary, rather than for the firearm offenses, after his return to custody in December 1979. Therefore, the district court clearly erred when it found otherwise, and we remand for resentencing.

**III.**

Covington next claims that there was insufficient evidence that the substance he possessed was crack cocaine, rather than some other type of cocaine base, for purposes of his sentencing under U.S. Sentencing Guidelines Manual § 2D1.1. Covington does not challenge the finding that he possessed 832.17 grams of cocaine base. Indeed, at trial, lab evidence was introduced identifying the substance as cocaine base. Trial Tr. at 241. Instead, Covington suggests that a lab test or the testimony of a chemistry expert is required before a sentencing court may find by a preponderance of the evidence that the cocaine base is crack cocaine. We disagree.

We review the district court's finding as to the "identity of drugs attributable to a defendant for clear error, reversing only if we are left with a definite and

firm conviction that a mistake has been made." <u>United States v. Maxwell</u>, 25 F.3d 1389, 1397 (8th Cir. 1994). The Sentencing Guidelines define crack as a "form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c) (Note D) (1995). It is well established that "the identity of a controlled substance can . . . be proved by circumstantial evidence and opinion testimony." <u>United States v. Williams</u>, 982 F.2d 1209, 1212 (8th Cir. 1992) (finding the evidence sufficient to find guilt beyond a reasonable doubt when "narcotics detective testified that in his opinion the

government's exhibits were crack cocaine"). Here, Detective Larry Cridlebaugh of the Kansas City, Missouri Police Department testified at sentencing that it was his opinion, based on his significant narcotics experience consisting of hundreds of encounters with crack cocaine, that the "tan rock-like substance" in Williams's purse was crack. Sentencing Tr. at 18-19. That evidence was more than sufficient, and the district court did not clearly err when it found the cocaine base to be crack cocaine.

## IV.

Covington also challenges the sufficiency of the evidence supporting his conviction for conspiracy. He claims that Woods's testimony was required to establish the existence of a conspiratorial agreement, an element of his offense, and that because Woods was not credible, his testimony could not be believed by a rational jury. We disagree. "Both the Supreme Court and this Circuit have recognized the propriety of using and relying upon the testimony of a coconspirator to prove another's connection to the conspiracy." United States v. Cruz, 739 F.2d 395, 396 (8th Cir. 1984). In this case, Woods's testimony was corroborated in many respects by the testimony of Williams, and was also consistent with the series of events witnessed by several Kansas City police officers who testified at trial. In any event, the jury had the opportunity to view Woods's testimony and gauge his credibility. Because "[i]t is not the function of the appellate court to judge the credibility of a witness," United States v. Jackson, 959 F.2d 81, 82 (8th Cir. 1992), we accept the jury's apparent conclusion that Woods's testimony was credible. After reviewing the evidence in

the light most favorable to the government, see id. (standard of review), we find sufficient evidence to support Covington's conviction.

## V.

Next, Covington contends that the district court erroneously gave the jury a deliberate ignorance instruction. Covington reasons that the instruction undermined his

defense strategy of attacking the credibility of his coconspirators, Woods and Williams. It appears that the deliberate ignorance instruction was meant to apply only to Pittman, whose defense was based on his having had no knowledge of the purchase. Nonetheless, the instruction was written to be generally applicable to each co-defendant.[5] We agree with Covington that the district court erred in giving the jury a generally applicable instruction when it was only relevant to the case against Pittman. See United States v. Barnhart, 979 F.2d 647, 652 (8th Cir. 1992) (deliberate ignorance instruction "should not be given unless there is evidence to support the inference that defendant was aware of a high probability of the existence of the [drugs] and purposely contrived to avoid learning [of the drugs] in order to have a defense in the event of a subsequent prosecution" (quotation and citation omitted)). We conclude, however, that the error was harmless.

An unwarranted willful blindness instruction "creates a risk that the defendant will be convicted because he acted negligently or recklessly."[6] Id. An erroneous willful blindness instruction is harmless if it is "clear beyond a reasonable doubt that the jury would have

---

[5]The government argues that the jury instruction applied only to Pittman, and produced a copy of a jury instruction in its brief which referred specifically to Pittman. This "instruction" appears nowhere in the district court record, which includes only an instruction applicable to any defendant. See Instructions Given to Jury on Dec. 6, 1996, No. 19. We note our displeasure with the government's failure to correctly represent the trial record in its brief or address the merits of Covington's claim.

[6]In this case, the risk of error was minimized because the instruction, itself, warned the jury that it could not convict for reckless or negligent conduct. See Instructions Given to Jury on Dec. 6, 1996, No. 19.

returned a verdict of guilty." <u>Id.</u> (quotation, citation, and alteration omitted). Here, the error was harmless because the evidence that Covington took part in the crack purchase was overwhelming. <u>See</u> <u>United States v. White</u>, 794 F.2d 367, 371 (8th Cir. 1986). Additionally, the risk of conviction for negligent or reckless behavior is particularly low when, as here, there is a conviction for conspiracy requiring

proof of a conspiratorial agreement.  See United States v. Hurley, 63 F.3d 1, 9-10 (1st Cir. 1995) (willful blindness instruction does not "dilute[] the express 'intent' requirement of the conspiracy count").  Additionally, any reasonable juror would have understood the instruction to apply only to Pittman, the only defendant to raise lack of knowledge of the drugs as a defense.  In fact, the jury showed it understood the distinction by acquitting Pittman while convicting Covington.  Given "the circumstances of the error," Barnhart, 979 F.2d at 653, any error caused by the instruction was harmless.

## VI.

Covington finally contends that the district court erred in denying his motion for a mistrial after Woods and Williams spoke briefly with each other when they were transported from the courthouse to the jailhouse, because the communication violated Federal Rule of Evidence 615.  Rule 615 provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses."  The district court has substantial discretion in deciding whether to grant a mistrial, and will be reversed only "if evidence of clear prejudice indicates the trial court's ruling was an abuse of discretion."  United States v. Kindle, 925 F.2d 272, 276 (8th Cir. 1991).  Here, after Woods had testified, he and Williams spoke briefly twice during a single trip from the courthouse to the jailhouse.  A U.S. Marshal promptly instructed them not to discuss the case and there has been no showing that the contact resulted in less than candid testimony by Williams.  See id. (finding no prejudice when "[t]here was no showing made that the

-16-

contact resulted in the tailoring of witness testimony .
. . or the development of less than candid testimony which
Rule 615 seeks to prevent"). Without more of a showing by
the defendant, we see no prejudice which would allow us to
conclude that the district court abused its discretion in
deciding not to grant a mistrial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.