2023 IL App (2d) 220100
No. 2-22-0100
Opinion filed January 6, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19 CF 2294 |
| JORDAN C. SERRATO, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals an interlocutory court order granting in part the motion of defendant, Jordan C. Serrato, to suppress evidence that police seized in executing a warrant to search his residence. The State contends primarily that the suppressed evidence at issue, a firearm, was properly seized because it was in plain view. We agree and reverse the part of the order suppressing the gun.

¶ 2                               I. BACKGROUND

¶ 3    The State indicted defendant for being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2018)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), unlawful possession of cannabis with the intent to deliver (720 ILCS 550/5(d), (e) (West 2018)), unlawful possession

of cannabis (*id.* § 4(e)), unlawful possession of hydrocodone (720 ILCS 570/402(c) (West 2018)), and unlawful possession of tramadol (*id.*). Defendant moved to quash a warrant to search his home and suppress the resulting evidence seized, including evidence of drug possession and a handgun.

¶ 4    Defendant's motion alleged as follows. On November 15, 2019, at 2:37 p.m., a judge signed a warrant for members of the North Central Narcotics Task Force (Task Force) to search a house, an attached garage, and the curtilage in South Elgin. The warrant was limited to evidence of the unlawful possession of controlled substances with the intent to deliver. Nothing in the warrant authorized seizing any weapons. Melinda Anyon, a St. Charles police officer assigned to the Task Force, prepared the affidavit for the warrant. In her affidavit, Anyon did not state that any weapons were observed in the home. She did state that, in one clear garbage bag outside the residence, agents found "four (4) plastic straws with suspect [*sic*] cocaine residue that field tested positive for the presence of cocaine" and an envelope with the address of the house. However, Anyon's affidavit did not say when the bag was placed outside or the date of the letter.

¶ 5    Defendant's motion alleged further that, at approximately 6:05 p.m., Task Force agents, including Anyon, executed the warrant. After the agents entered the house, they found defendant and a woman inside. The agents seized a gun, although no evidence connected it to drugs.

¶ 6    Defendant contended that both the drug-related evidence and the gun must be suppressed. He argued that the affidavit alleged facts consistent with personal drug use but did not provide probable cause of drug dealing. Further, these affidavit allegations were stale because they were based on three-month-old information from an anonymous person. Finally, the firearm was seized despite no authorization in the warrant and nothing to tie it to drug dealing.

¶ 7    We turn to the hearing on defendant's motion. Anyon testified that she and other agents executed the warrant at 6:05 p.m. on November 15, 2019. Before the search, Anyon learned that defendant was a convicted felon, and she told this to the other agents involved in the search.

¶ 8    The trial court admitted a copy of the warrant application, including Anyon's affidavit. In the affidavit, she stated as follows. In August 2019, she learned through an anonymous tip that cocaine was being sold at the address. On November 14, 2019, she observed two garbage cans at the curb in front of the house, ready for pickup. Anyon and another officer took possession of 14 clear garbage bags and 15 grocery-sized bags from the cans. The bags were loosely tied shut and had no holes or tears. An inspection later revealed that one clear garbage bag contained four plastic straws with suspected cocaine residue; "a portion of [one] suspected cocaine straw field-tested positive for the presence of cocaine." Also in that larger bag were five torn clear plastic bags with suspected cocaine residue (a type of packaging commonly used for drugs) and a letter from the Illinois Department of Revenue addressed to the property. Nothing of evidentiary value was found in the remaining bags.

¶ 9    Anyon testified that, as she and the other agents entered the house, she saw defendant and a woman inside. Anyon later learned that the woman's last name was "Coles." Before the search began, the agents handcuffed defendant and Coles. Anyon interviewed them in the presence of Sergeant Michael Young. She learned that defendant did not own the house but rented it. Coles said that defendant was her boyfriend. Coles added that defendant lived in the house and did not have a roommate, but she frequently stayed over there. Coles was allowed to go anywhere except the basement because defendant always kept the basement door locked. Anyon took defendant into custody and did not participate in the search.

¶ 10    Young testified as follows. He was a sergeant with the Illinois State Police. He did not recall whether he participated in the search or only collected evidence. In a presearch briefing, Anyon told the other agents that defendant was a convicted felon. At 6:05 p.m., the agents entered the house. They collected a firearm in plain view on the top shelf of a kitchen cabinet. Right next to it was a magazine containing four rounds of ammunition. They also recovered defendant's identification card from the middle shelf. Young took photographs of the gun, the card, and the shelves where they were located. The court admitted these photographs into evidence.

¶ 11    In arguments, defendant contended first that the seizure of the gun was illegal because (1) the search warrant said nothing about weapons; (2) possession of a gun is not illegal *per se*, and there was no evidence that the gun had been stolen or defaced; and (3) although defendant was a convicted felon who could not legally possess the gun, the evidence was consistent with Coles legally owning it. Defendant argued second that the seizure of any drug-related evidence was illegal because (1) the warrant's allegations were based on one stale anonymous tip, which provided no details, and (2) nothing connected what the agents found in the garbage bags to the residence.

¶ 12    The State argued that the seizure of the gun was proper because (1) the agents saw it in plain view when they were properly inside the house and (2) they had probable cause to believe that it was evidence that defendant, whom they knew was a convicted felon, illegally possessed a firearm. The State also argued that the garbage pull was legal because defendant had no privacy interest in abandoned property. Further, the cocaine residue in a container directly in front of the house gave the agents probable cause to search the house. Alternatively, the State argued, even were the warrant technically insufficient, the search of the residence was valid because the agents relied on the warrant in reasonably good faith.

¶ 13    The trial court granted defendant's motion in full. The court held first that there was no probable cause for the search of the house, despite the allegations of the warrant affidavit. The anonymous tip provided no details and was stale. Thus, the only evidence supporting probable cause in the affidavit was that, after the garbage pull, one plastic straw tested positive for cocaine, and several clear plastic bags had suspected cocaine residue.

¶ 14    The court next held that the plain-view doctrine did not validate the seizure of the firearm. The court reasoned in part that, because the agents never had probable cause to enter the house to search for drug-related evidence, they were not lawfully present when they saw the gun. The court reasoned further that, (1) although the agents knew in advance that defendant was a convicted felon, they knew nothing that made it illegal for Coles to possess a firearm, and (2) a gun in a cabinet accessible to anyone in the house refuted the theory that it was immediately apparent that the gun was evidence of a crime. Finally, the court held that the entry into the house could not be validated by good faith, because the affidavit so lacked indicia of probable cause that the agents could not reasonably rely on it.

¶ 15    The State moved to reconsider. The court reversed its order in part. It held that the good-faith doctrine did apply, validating the entry and the seizure of drug-related evidence from the house. However, the court still suppressed the firearm. Although the agents were properly in the house when they seized the gun, the lack of evidence tying defendant to the gun meant that its incriminating character was not immediately apparent to them. The State timely appealed.

¶ 16                                  II. ANALYSIS

¶ 17    On appeal, the State argues that (1) the trial court erred in holding that the warrant did not provide probable cause for the agents to search the house and (2) the court erred in suppressing the gun, as the plain-view doctrine applied despite any weaknesses in the evidence of who owned

the gun. Defendant responds first that we have no jurisdiction to consider the State's first contention, because (1) the trial court upheld the entry and search on the ground of good faith and (2) the State may not appeal a favorable ruling merely to correct the trial court's reasoning. Defendant responds second that the trial court properly suppressed the gun.

¶ 18    We do not consider the State's first argument, as it is wholly unnecessary for resolving the State's appeal of the suppression of the gun.[1] However, we agree with the State that the trial court erred in suppressing the gun. Accordingly, we reverse that part of the suppression order.

¶ 19    Although the warrant did not authorize the seizure of any firearms, the State contends that, because the agents were properly inside the house when they saw the gun in plain view, they legally seized it as evidence of the unlawful possession of a firearm by a felon. Defendant does not dispute that, based on good faith, the agents properly entered the house. He also concedes that the gun was in plain view. However, he contends that the trial court correctly held that the facts known to the agents did not make it immediately apparent to them that defendant possessed the gun. As did the trial court, defendant relies on the scant evidence of who owned the gun and the possibility that Coles possessed it legally. For the following reasons, we agree with the State.

---

[1]As best we can ascertain, the only difference this issue could make is that the existence of probable cause to believe that the house contained evidence of drug dealing would strengthen an inference that the gun was evidence of illegal drug dealing, as well as of unlawful possession of a firearm by a felon. If so, there would be two ways to argue that the plain-view doctrine applied. However, as we hold in any event that the agents had probable cause to believe that the gun was evidence of the possession offense, this conclusion would be superfluous.

¶ 20    Because we are applying the law to undisputed facts, our review is *de novo*. See *People v. Ceja*, 204 Ill. 2d 332, 347 (2003). Under the plain-view doctrine:

> "A police officer may properly seize evidence of a crime without a warrant if (1) the officer was lawfully in a position from which to view the object seized in plain view, (2) the object's incriminating character was immediately apparent, meaning *the officer had probable cause to believe the object was contraband or evidence of a crime*, and (3) the officer had a lawful right of access to the object itself." (Emphasis added.) *People v. McCavitt*, 2021 IL 125550, ¶ 111.

¶ 21    Here, the trial court held that, under the good-faith doctrine, (1) the agents were lawfully positioned to view the gun, (2) the gun was in plain view when it was seized, and (3) the agents had a lawful right of access to the object itself. In refusing to apply the plain-view doctrine, the court relied solely on the test's second prong, holding that the gun's incriminating character was not immediately apparent. The court based this conclusion on the possibility that Coles owned the gun and the lack of evidence that her possession of the gun would have been unlawful. In so doing, we conclude, the trial court overlooked two crucial matters.

¶ 22    First, in resolving whether the gun was evidence of a crime, the court overlooked that the crime in question was not unlawful *ownership* of a firearm by a felon, but unlawful *possession* of a firearm by a felon. Thus, even if the agents knew that Coles owned the gun (which they did not), that would not have been inconsistent with defendant *possessing* the gun. Ownership and possession are legally different, and the latter does not require the former. See, *e.g.*, *People v. Covington*, 92 Ill. App. 3d 598, 600-01 (1981) (defendant was guilty beyond a reasonable doubt of unlawfully possessing firearm even though he denied owning it and was present with several other people in apartment primarily occupied by a third party); *People v. Gomez*, 80 Ill. App. 3d

668, 673 (1980) (guilt of unlawful possession of narcotics does not require proof that defendant owned them). *Possession* requires only that a person (1) knows of the object's presence and (2) has immediate and exclusive control over the area where the object is found. *People v. Hill*, 226 Ill. App. 3d 670, 672 (1992). Thus, multiple people may possess an object simultaneously as long as each has the requisite control. *People v. Denton*, 264 Ill. App. 3d 793, 798-99 (1994) (defendant proved guilty beyond reasonable doubt of possessing contraband that was found in his residence even though roommate testified that contraband belonged to him); *Hill*, 226 Ill. App. 3d at 673 (other person's access to gun in defendant's rented residence did not negate proof beyond a reasonable doubt that defendant unlawfully possessed same gun). Thus, whether Coles *owned* the gun *legally* does not resolve whether defendant *possessed* the gun *illegally*.

¶ 23    Second, in holding that it was not immediately apparent that the gun was evidence of crime, the trial court apparently equated "immediately apparent" with "undeniable." However, a police officer needs only *probable cause* to believe that an object is evidence of a crime. See *McCavitt*, 2021 IL 125550, ¶ 111; *People v. Petty*, 2017 IL App (1st) 150641, ¶ 29.

¶ 24    Applying the law here, we agree with the State that, when the agents seized the gun, they had probable cause to believe that it was evidence of a crime—unlawful possession of a weapon by a felon. The agents knew that (1) defendant was a felon who could not legally possess a firearm, (2) he rented and resided in the house with no roommates, (3) the gun was in a cupboard on a shelf above his identification card, and (4) defendant was present and had enjoyed unimpeded access to the cabinet. The evidence of possession here was approximately as strong as that which the appellate courts in *Covington*, *Gomez*, *Denton*, and *Hill* held proved possession beyond a reasonable doubt. *A fortiori*, it established probable cause of possession and supported the agents' seizure of the gun.

¶ 25    Defendant relies on authorities that are either too general to be of service or based on facts that are not nearly comparable to those here. Accordingly, we need not discuss these authorities.

¶ 26                                    III. CONCLUSION

¶ 27    For the reasons stated, we reverse that part of the interlocutory order of the circuit court of Kane County suppressing the gun. We affirm the order otherwise, and we remand the cause.

¶ 28    Order affirmed in part and reversed in part; cause remanded.

2022 IL App (2d) 220100

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 19-CF-2294; the Hon. John A. Barsanti, Judge, presiding. |
| **Attorneys for Appellant:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Thomas A. Lilien, and Vicki P. Kouros, of State Appellate Defender's Office, of Elgin, for appellee. |