# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1463WMS

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the |
| | * | United States District Court |
| Steven W. Brown, | * | for the Western District |
| | * | of Missouri |
| Appellant. | * | |

_____

Submitted: June 9, 1998
Filed: September 9, 1998

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit
Judges, and PANNER[1], District Judge

_____

OWEN M. PANNER, District Judge.

A jury in the Western District of Missouri convicted appellant Steven W. Brown of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846, and possession, with intent to distribute, a controlled substance in violation of 21 U.S.C. § 841(a)(1). Brown was sentenced to serve 360 months in prison. We affirm the

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

convictions as well as the district court's denial of Brown's pre-trial motion to suppress evidence and statements, but remand for resentencing.

## BACKGROUND

The police received an anonymous tip that Brown would be arriving from St. Louis at a certain time with five ounces of "crack" cocaine. The caller described the vehicle that Brown would be driving, including its license number, and also identified the woman who would be accompanying Brown. The police previously had received similar tips concerning Brown. At the appointed hour, they waited along the highway in an unmarked vehicle until they spotted Brown's car. Except for a few minor details, everything seemed consistent with the information that had been received.

Police followed Brown's car, intending to stop it once backup units arrived, but he pulled off the highway into a gasoline station. From this point onward, the police version diverges sharply from that told by Brown and his companion. It is undisputed, however, that the police approached Brown, issued him a *Miranda* warning, and told him that they suspected he was transporting drugs. Although the police deny that Brown was in custody, they concede that they would not have let him drive away. Police searched Brown's vehicle and found a small quantity of marijuana in a jacket on the front seat of the car. After taking Brown and his companion to jail, a police canine unit searched the entire car including the engine compartment, and eventually discovered 48.70 grams of cocaine base hidden beneath the battery. Brown was then interviewed by officers. He admitted knowledge of the drugs and made statements aimed at exculpating his companion.

Brown was soon released from jail. The jury heard testimony that he continued transporting and distributing "crack" cocaine until he was re-arrested the following year.

2

## PRETRIAL MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

The district court found that although the police had a sufficient basis to stop the car, they did not actually do so, hence this was only an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). The district court also found that Brown and his companion voluntarily consented to the search of the car, and therefore denied Brown's motion to suppress the evidence seized and the statements that he made to police following his arrest. We review the district court's findings of fact for clear error. *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). Whether Brown was deprived of his rights under the Fourth and Fifth Amendments is a mixed question of law and fact that we review de novo. *Id.* While we are inclined to believe that Brown was in custody, the end result is the same. The police had a sufficient basis to stop the car, and the district court's finding that Brown voluntarily consented to the search was not clearly erroneous. Accordingly, the district court did not err by denying Brown's motion to suppress.

## TRIAL

Brown was ordered to furnish a handwriting sample so that it could be compared to certain incriminating documents which allegedly were in his handwriting. He refused. At trial, the jury was informed of Brown's refusal. Brown contends that this violated his Fifth Amendment privilege against self-incrimination. We disagree. A handwriting exemplar is non-testimonial. *Gilbert v. California*, 388 U.S. 263, 266-67 (1967). Brown's refusal to give an exemplar was not privileged, and the jury could properly consider his refusal as evidence that the results of that testing would have been adverse.

We also hold that the district court did not abuse its discretion in denying Brown's request for a continuance, at the close of the government's case, so that his counsel could interview a prospective witness. Based upon the scant information that defense counsel provided to the court, it was very unlikely that this individual could provide relevant testimony, let alone evidence that might have affected the outcome of the trial.

<u>SENTENCE</u>

Brown contends the government failed to prove that he was distributing "crack" cocaine as opposed to some other form of cocaine base. We review for clear error the district court's findings as to the identity of the drug, reversing only if we are left with a definite and firm conviction that a mistake has been made. *United States v. Covington*, 133 F.3d 639, 643 (8th Cir. 1998).

During Brown's trial, a government chemist testified that the substance seized was "cocaine base." However, this witness did not expressly state that the substance was "crack" cocaine and she appeared to be unfamiliar with the process for manufacturing crack. For purposes of the Sentencing Guidelines the term "cocaine base" is limited to the particular form of cocaine base known as "crack" and does not include certain other substances that a chemist would also classify as cocaine base. *See United States v. Montoya*, 87 F.3d 621, 623 (2d Cir. 1996) (per curiam); U.S.S.G. Appendix C, Amendment 487 (effective Nov. 1, 1993). Therefore, testimony that a substance chemically is "cocaine base" does not entirely exclude the possibility that the substance may be a form of cocaine base other than "crack."[2]

We nevertheless affirm the district court's finding that Brown was distributing crack cocaine. While cocaine base can theoretically include substances other than crack, *see Montoya,* 87 F.3d at 623, there was no evidence here that Brown was distributing coca

---

[2] In *United States v. Kang*, 143 F.3d 379 (8th Cir. 1998), we said that for purposes of the Sentencing Guidelines the terms "cocaine base" and "crack" are synonymous. *Id* at 380. However, the context of that discussion was a plea agreement in which the defendant admitted possessing "cocaine base" and the question on appeal was whether he should be sentenced for possession of crack or pursuant to the guideline that applies to other forms of cocaine. Thus, we were concerned with the meaning of the term "cocaine base" as it is used in the Sentencing Guidelines. By contrast, the dispute here concerns the definition of "cocaine base" from the standpoint of a chemist.

paste or other exotic forms of cocaine base. In addition, crack cocaine usually has a distinctive appearance and form that makes it easy to recognize. *Cf* U.S.S.G. § 2D1.1(D); *United States v. Abdul,* 122 F.3d 477, 479 (7th Cir. 1997). Finally, we note that among the most knowledgeable experts on crack are those who regularly smoke it or sell it. At trial, the government called a number of users and distributors, who each testified that the substance they obtained from Brown was crack and offered no complaints about the quality of the merchandise they had received. The verdict of the marketplace is strong confirmation that Brown was selling genuine crack. Although the government's chemist ought to have been better informed about the process for manufacturing crack, the government was not required to prove that this batch was actually manufactured by the sodium bicarbonate process. *Abdul*, 122 F.3d at 479.

Brown also argues that because the penalty for crack is so much more severe than the penalty for other forms of cocaine,[3] the government must prove the identity of the drug by clear and convincing evidence rather than the preponderance standard applicable to other factual questions at sentencing. Like many of our sister circuits, we previously have at least acknowledged "the possibility that the preponderance standard the Court approved for garden variety sentencing determinations may fail to comport with due process where, as here, a sentencing enhancement factor becomes 'a tail which wags the dog of the substantive offense.' " *United States v. Townley*, 929 F.2d 365, 369 (8th Cir. 1991), quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986). *See also United States v. Watts*, 519 U.S. 148, 117 S. Ct. 633, 637 (1997) (acknowledging divergence of opinion within the lower courts on this question); *United States v. Galloway*, 976 F.2d 414, 425-26 (8th Cir. 1992) (en banc) (acknowledging the possibility that due process may require a higher standard of proof than a mere preponderance "if the punishment meted out following application of the sentencing factors overwhelms or is extremely disproportionate to the punishment that would otherwise be imposed").

---

[3] In Brown's case, a finding that the controlled substance was crack rather than ordinary cocaine adds approximately twenty years to the duration of his sentence, or about a five-fold increase.

In *Townley*, we did not decide this question because we concluded that the result in that case would be the same under either standard. *Townley*, 929 F.2d at 370. For the same reason, we decline to decide that issue here. There was abundant testimony that Brown was transporting and distributing crack, and no evidence which suggests that it was any other substance. Even assuming, *arguendo*, that the clear and convincing standard applies, the government has met its burden of proof.

Brown also challenges the district court's finding that he was responsible for between 150 and 500 grams of crack. We will reverse the district court's determination of the quantity of drugs only if it is clearly erroneous. *United States v. Alexander*, 982 F.2d 262, 267 (8th Cir. 1992). The presentence investigation report recommended that the district court find that Brown was responsible for 150 to 500 grams. At sentencing, however, the prosecutor told the court:

> I believe that the evidence at trial established that the amount of cocaine base or crack would be 50 grams -- more than 50 grams but less than 150 grams. So in that respect, I would differ with -- not differ with the presentence report, but I'm not going to bring in witnesses to testify to those amounts that would bring it over that amount.
>
> So I would contend to the Court that the evidence at trial did support a finding that there were in excess of 50 grams but less than 150 grams . . . .

(Sent. Tr. 11-12). Notwithstanding that concession, the district court entered a finding that Brown was responsible for 150 to 500 grams.

Although the district court was not bound by the government's concession, the court did not articulate any reason for rejecting it, or even clearly state that the court was rejecting that concession. On this record, we have no assurance that the rejection was intentional rather than inadvertent. We previously have held that once a defendant objects to a factual allegation in the presentence report, the court must make (i) a finding as to the

allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. *Covington*, 133 F.3d at 633; *United States v. Granados*, 962 F.2d 767, 771-72 (8th Cir. 1992). If the court chooses to make a finding as to the factual allegation, the government must introduce evidence sufficient to convince the Court by a preponderance of the evidence that the fact in question exists. *Id.*

In this case, the government did not introduce any evidence to prove that Brown was responsible for over 150 grams of crack, and further conceded that the testimony at trial was insufficient to establish that fact. Therefore, we hold that the district court clearly erred by finding that Brown was responsible for more than 150 grams of crack, and we remand for resentencing.

Brown's remaining contentions will not detain us long. The district court did not err in denying Brown a two-level reduction for acceptance of responsibility. Ordinarily, a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse, is not entitled to a reduction for acceptance of responsibility. *United States v. Amos*, 952 F.2d 992, 995 (8th Cir. 1991). The district court adequately justified its decision not to give Brown this reduction.

The district court also acted properly by increasing Brown's sentence four levels for being an organizer or leader of criminal activity involving five or more participants. A sentencing court's determination of a participant's role in the offense pursuant to U.S.S.G. § 3B1.1 is reviewed under the clearly erroneous standard. *United States v. Skorniak*, 59 F.3d 750, 757 (8th Cir. 1995). There was testimony that Brown had a network of dealers working under him. While not all were working for him at the same time, and some might have been merely buying for themselves, the district court reasonably could have found that at various times during the conspiracy Brown had at least four helpers or underlings, and that Brown was their leader.

## CONCLUSION

We affirm Brown's convictions as well as the district court's denial of Brown's pre-trial motion to suppress evidence and statements.  We reverse the district court's finding that Brown was responsible for more than 150 grams of crack and remand for resentencing.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.