# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1938WM

_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Frank Roy Marsalla, | * |
| | * |
| Appellant. | * |

_____                    Appeals from the United States
                                    District Court for the Western
No. 98-1984WM                       District of Missouri.

_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Letti K. Rivera, also known as Letti K. | * |
| Wright, | * |
| | * |
| Appellant. | * |

_____

Submitted:  December 15, 1998
Filed:  January 19, 1999

_____

Before FAGG, HEANEY, and WOLLMAN, Circuit Judges.

_____

FAGG, Circuit Judge.

Frank Roy Marsalla and Letti K. Rivera were involved in a large-scale drug conspiracy. Following their arrests, Marsalla pleaded guilty to several conspiracy and substantive drug-related offenses, and Rivera elected to go to trial where a jury convicted her of conspiracy to distribute Schedule II controlled substances. Marsalla appeals his sentence and Rivera appeals her conviction and sentence. We affirm.

Marsalla contends the Government failed to prove he purchased crack cocaine instead of another type of cocaine in December of 1995, and thus the district court improperly sentenced him under the crack cocaine guidelines. At sentencing, Urena Lowe, one of Marsalla's codefendents, testified she sold Marsalla crack cocaine in November and December of 1995. For the November sale, Lowe purchased cocaine in powder form and processed it into crack cocaine herself, which turned the substance into "little stones" with a "creamy milky color." Marsalla does not challenge the district court's finding that the substance involved in this transaction was crack cocaine.

Instead of making the crack cocaine for the December transaction, Lowe purchased the substance from a known supplier who made crack cocaine with "ammonia and baking soda." The supplier sent the substance to Lowe's residence in a clear plastic bag. Although Lowe did not remove the substance from the bag, she saw it was a "more solid piece of rock. . . . The same substance, creamy, milky white." Besides making the crack cocaine sold to Marsalla in November, Lowe observed and dealt with crack cocaine "three or four times a month" from May to November of 1995. Because of her familiarity with the drug, Lowe testified she had "no doubt" the rock-like substance sold to Marsalla in the December transaction was crack cocaine. Marsalla called a chemist who vigorously challenged Lowe's ability to identify the

-2-

disputed substance as crack cocaine. Although the chemist testified that crack cocaine could not be made with ammonia, he acknowledged that mixing cocaine with ammonia and baking soda would produce crack cocaine. Based on Lowe's experience with crack cocaine as a maker, buyer, handler, observer, and seller, the district court found that Marsalla purchased crack cocaine in December.

Crack cocaine "usually has a distinctive appearance and form" that makes it easily recognizable to a person who is experienced with the drug. United States v. Brown, 156 F.3d 813, 816 (8th Cir. 1998). Although the record presented the district court with conflicting views about Lowe's ability to identify the challenged substance, the Government's evidence showed that Lowe's real-life experiences enabled her to recognize crack cocaine when she saw it. See United States v. Paiva, 892 F.2d 148, 155-57 (1st Cir. 1989). Thus, the district court justifiably relied on Lowe's well-grounded opinion that the substance was crack cocaine. See id. at 157; see also Brown, 156 F.3d at 816 (district court relied on lay witnesses' experience in identifying crack cocaine); United States v. Cantley, 130 F.3d 1371, 1378-79 (10th Cir. 1997) (same), cert. denied, 118 S. Ct. 1098 (1998); United States v. Taylor, 116 F.3d 269, 273-74 (7th Cir. 1997) (same). Additionally, Marsalla's failure to offer evidence that he complained about the quality of the substance he received from Lowe "is strong confirmation that [Lowe] was selling genuine crack." Brown, 156 F.3d at 816. Finally, relying on the preponderance of the evidence standard, Marsalla contends "the Government [failed] to prove at sentencing the type of drug attributable to [him]." We disagree. Having carefully considered the record, we can neither say the Government failed to satisfy this burden, see United States v. Monroe, 978 F.2d 433, 435 (8th Cir. 1992), nor the district court committed clear error when it chose between two permissible views of the evidence, see United States v. Rice, 49 F.3d 378, 385 (8th Cir. 1995).

We also reject Rivera's contentions. First, Rivera contends the Government failed to prove she conspired with Marsalla to distribute various illegal drugs. After

reviewing the record in a light most favorable to the verdict, we believe sufficient evidence exists from which a reasonable jury could find beyond a reasonable doubt that Rivera was guilty of conspiring to distribute Schedule II controlled substances. See United States v. Ortiz, 125 F.3d 630, 633 (8th Cir. 1997), cert. denied, 118 S. Ct. 1087 (1998). The Government offered recordings of telephone conversations between Rivera and Marsalla that contained coded references to drug-distribution activity, information on drug sources, and discussions on how to process cocaine into crack form. Next, Rivera contends the Government proved the existence of multiple conspiracies rather than a single conspiracy to distribute a number of different drugs. We disagree. The Government proved the existence of a single conspiracy by presenting abundant evidence that showed Rivera participated with other coconspirators sharing a common purpose and objective under one overall agreement. See United States v. Summers, 137 F.3d 597, 602 (8th Cir. 1998). Finally, having only considered the amount of drugs directly attributable to Rivera rather than the entire amount chargeable to the conspiracy, the district court properly refused Rivera's request for a minimal participant reduction to her sentence. See United States v. McCarthy, 97 F.3d 1562, 1573-74 (8th Cir. 1996), cert. denied, 117 S. Ct. 1011 (1997), and 117 S. Ct. 1284 (1997).

We affirm Marsalla's sentence and Rivera's conviction and sentence.

HEANEY, Circuit Judge, concurring in part and dissenting in part.

While I concur in the result reached by the majority with respect to Rivera, the facts of Marsalla's case do not warrant application of the visual identification doctrine. I respectfully dissent.

There can be no doubt that the visual identification of a controlled substance is virtually impossible, even for a chemist. Accordingly, in the vast majority of cases, the prosecution should introduce into evidence expert testimony identifying the chemical

-4-

composition of the substance at issue.  In instances, like this case, where the substance is either destroyed or unavailable, other methods of proving the identity of the substance are necessary.  Our court has therefore allowed drug agents to testify as to their visual identification of controlled substances.  See United States v. Covington, 133 F.3d 639, 644 (8th Cir. 1998); United States v. Williams, 982 F.2d 1209, 1212 (8th Cir. 1992).  There may even be times when it is appropriate to allow lay witnesses who have direct experience with a substance to testify as to its identity.  See United States v. Westbrook, 896 F.2d 330, 335 (8th Cir. 1990) (two witnesses used substance at issue and had extensive previous use); United States v. Meeks, 857 F.2d 1201, 1204 (8th Cir. 1988) (co-conspirators used substance and called it "cocaine"); see also United States v. Cantley, 130 F.3d 1371, 1378-79 (10th Cir. 1997) (multiple police officers and lay witnesses who purchased substance from, or sold substance to, defendant testified that substance was "crack"), cert. denied, 118 S. Ct. 1098 (1998); United States v. Taylor, 116 F.3d 269, 273-74 (7th Cir. 1997) (drug supplier, purchasers, and users testified that substance was "crack"); United States v. Paiva, 892 F.2d 148, 155-57 (1st Cir. 1989) (witness with seven-year cocaine habit who had used and tasted cocaine many times testified that the substance at issue tasted like cocaine).  There must also, however, be a limit to the capability of lay witnesses to identify substances.

Extending the visual identification doctrine to the facts of this case is inappropriate.  Lowe was the only witness who testified that the December 1995 substance was crack.  She testified pursuant to a plea agreement and admitted to her lack of experience with crack.  (See Appellant's App. at 117.)  As the majority notes, Lowe had only seen what she assumed to be crack between three to four times a month for seven months.  While she "cooked" the November 1995 cocaine into crack herself, she did not smoke, taste, or obtain the December 1995 substance.  In this regard, the majority's reliance on United States v. Brown, 156 F.3d 813 (8th Cir. 1998), is inapposite.  In that case, a chemist and users and distributors of the substance in question testified as to its identity.  See id. at 816.  Here, we have a single witness with limited experience testifying pursuant to a plea agreement.  Moreover, even though the

"marketplace" may be relevant in determining the identity of drugs at sentencing, Lowe admitted that in order to identify the December 1995 substance "[y]ou probably would have to taste it to know that it was crack. Smoke it." (Appellant's App. at 118.) She admittedly did neither and thus had no "direct experience" with the substance in question. In my view, Lowe's experience is not a sufficient foundation for her ability visually to identify the December 1995 substance as crack. Considering the relative inexperience of the only witness, the great sentencing disparity between powder and crack cocaine, and the fact that the government bears the burden of proof,[1] it is wholly inappropriate to extend the visual identification doctrine to the facts of this case.

For the reasons discussed above, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[1]With respect to the government's burden of proof, the majority points out that Marsalla relied on a preponderance-of-the-evidence standard. I note that our court has expressly left open the question of whether the government must prove non-garden variety sentencing facts by a preponderance of the evidence or by clear and convincing evidence. See Brown, 156 F.3d at 817. Because the issue of the appropriate standard is not before us, however, there is no need to address the question.