# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1382

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United |
| v. | * | States District Court for |
| | * | the Northern District of Iowa |
| James Stephen Hyatt, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 14, 1999

Filed:   March 29, 2000

_____

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and KYLE, District Judge.[1]


KYLE, District Judge.

_____

[1]    The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

Appellant James Stephen Hyatt ("Hyatt") was arrested in September 1997 in Cedar Rapids, Iowa, after a confidential informant identified Hyatt as a distributor of methamphetamine, or "crank." At the time of Hyatt's arrest, he was in the process of injecting himself with a substance he identified as "meth" to a police officer. See Transcript of Sentencing Hearing ("Tr.") at 85. A search of Hyatt's hotel room uncovered approximately one ounce of a substance that laboratory testing later identified as amphetamine.

In December 1998, Hyatt pled guilty to distribution, possession with intent to distribute, and conspiracy to distribute controlled substances, possession of a firearm by a user of controlled substances, and criminal forfeiture.[2] He refused to sign a plea agreement because he disagreed with the amount of controlled substances the Government attributed to him. This disagreement was resolved during the sentencing hearing, and Hyatt and the Government now agree that Hyatt is responsible for approximately 13 pounds of a controlled substance. Hyatt insists, however, that the controlled substance involved was amphetamine, not methamphetamine.

The district court[3] determined that the drug was methamphetamine, and sentenced Hyatt to 180 months in prison. If the district court had agreed with Hyatt that the drug involved was amphetamine, Hyatt's sentencing range would have been between 135 and 168 months. Hyatt filed this timely appeal of the sentence, raising three grounds in support of his appeal: first, that the district court erred in sentencing him on the basis of methamphetamine rather than amphetamine; second, that the district court erred in giving

---

[2] The government withdrew the distribution of controlled substances count at the sentencing hearing. See Tr. at 8.

[3] The Honorable Michael J. Melloy, Chief United States District Judge for the Northern District of Iowa.

Hyatt a three-level upward adjustment for his role in the offense; and third, that the Government's refusal to move for a downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1 was in bad faith.

I.

Hyatt and the Government disagree about the correct standard of review for the district court's decision to sentence Hyatt on the basis of methamphetamine rather than amphetamine. According to Hyatt, the district court based his sentence on intended conduct rather than actual conduct, and thus, under United States v. Lopez, 125 F.3d 597 (8th Cir. 1997), the district court's decision involves application of the Guidelines to the facts and should be reviewed de novo. Lopez, 125 F.3d at 599. The Government contends that the district court's decision as to the identity of the drugs involved is subject to review for clear error. See United States v. Brown, 156 F.3d 813, 816 (8th Cir. 1998).

Contrary to Hyatt's claim, the district court's inquiry did not concern what substance Hyatt intended to distribute and use, but rather what the evidence showed about the actual composition of the 13 pounds of controlled substance for which Hyatt was responsible. Because the vast majority of that 13 pounds was not available for testing,[4] the district court analyzed the testimony of members of the conspiracy regarding their understanding of the identity of the drug, as well as evidence from controlled buys from Hyatt's customers and supplier. Specifically, the court noted that two of six controlled buys from one of Hyatt's customers were methamphetamine, and that the controlled buy from Hyatt's supplier was also methamphetamine. The court also observed that all of the members of the conspiracy had pled guilty to methamphetamine, not amphetamine, thus evidencing Hyatt's co-conspirators' belief that the drug they were distributing was methamphetamine. See id.

---

[4] Police recovered only one ounce of controlled substance from Hyatt. The remainder of the 13 pounds Hyatt concedes he is responsible for was presumably used or sold.

Finally, it is clear from the transcript that the district court did not find credible Hyatt's claim that he distributed only amphetamine. See, e.g, id. at 186 ("I have severe serious reservations about whether [Hyatt] was truthful when he testified here today."). Thus, it is clear that the district court's decision as to the identity of the drugs was a factual finding, and not an application of the Guidelines to the facts. A factual finding underlying a sentence determination is reviewed for clear error. See United States v. Wells, 127 F.3d 739, 744 (8th Cir. 1997).

As discussed above, we will disturb the district court's factual findings only for clear error. This is especially true when those findings involve resolution of witness credibility issues. See United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994) (district court's conclusions as to credibility of witnesses are "virtually unreviewable on appeal"). In this case, the evidence cited above amply supports the district court's conclusion that the substance involved was methamphetamine or purported methamphetamine.

II.

Hyatt next asserts that the district court erred in giving him an upward adjustment for his role in the offense. "A sentencing court's determination of a participant's role in the offense pursuant to U.S.S.G. § 3B1.1 is reviewed under the clearly erroneous standard." United States v. Brown, 156 F.3d 813, 817 (8th Cir. 1998). The district court found that Hyatt was involved in a managerial role, and adjusted Hyatt's base offense level up three levels for that role. Hyatt argues that the evidence does not show that Hyatt supervised anyone. However, Hyatt admitted at the sentencing hearing that he paid one of his customers to drive him around so he could distribute drugs, and Hyatt's former girlfriend testified that Hyatt directed her and another individual to buy drugs from Hyatt's supplier after Hyatt was arrested. Accordingly, evidence exists from which the district court could reasonably

conclude that Hyatt's role in the offense warranted a three-level upward adjustment pursuant to § 3B1.1. Thus, the court's decision was not clearly erroneous.

## III.

Finally, Hyatt argues that the Government acted in bad faith when it refused to move for a substantial assistance departure pursuant to § 5K1.1. The Government interprets Hyatt's argument as alleging that the district court erred when it failed to hold an evidentiary hearing on Hyatt's bad faith claim. However, neither Hyatt nor his attorney requested an evidentiary hearing. Instead, Hyatt asked the district court to determine the merits of that claim based on the evidence presented at the sentencing hearing. Thus, we review the district court's denial of Hyatt's motion for a departure for an abuse of discretion. See United States v. Cruz-Ochoa, 85 F.3d 325, 326 (8th Cir. 1996).

Hyatt contends that he assisted the Government by giving information on a planned escape from a federal prison in Kansas, and by identifying his source for drugs. The Government does not dispute that Hyatt gave information on the prison escape, or that Hyatt's suppliers were indicted based, at least in part, on information Hyatt provided. According to the Government, however, Hyatt's refusal to acknowledge his role in directing his girlfriend to buy drugs while he was incarcerated, together with his continued insistence that he did not distribute methamphetamine, his admitted lies about the quantities of drugs involved, and his attempts to force his girlfriend to recant her version of the events combined to make Hyatt an unreliable and unusable witness.

The district court determined that Hyatt had failed to show that the Government acted in bad faith. The court stated that it "concur[red] . . . 100 percent" with the Government's decision not to move for a substantial assistance departure. Tr. at 184. Further, the court opined that the Government would be remiss if it tried to use Hyatt as a witness, in light of

the false testimony he had offered. <u>See</u> <u>id.</u> at 185 ("lies permeate the entire interview"). The evidence presented at the sentencing hearing more than supports the court's conclusion. For example, Hyatt's girlfriend testified that, only two weeks before the hearing, Hyatt contacted her to ask her to recant her statement regarding her attempt to buy drugs from Hyatt's supplier after Hyatt was arrested. <u>See</u> Tr. at 31. In addition, as discussed above, a district court is in a unique position to evaluate the credibility of witnesses, and in this case the court discredited nearly all of Hyatt's testimony. <u>See</u> <u>id.</u> at 186. The district court's refusal to find that the Government acted in bad faith was not an abuse of discretion.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.