OPINION
{¶ 1} Anthony Ross appeals from his conviction and sentence in the Montgomery County Court of Common Pleas on one count of drug trafficking and one count of tampering with evidence.
 {¶ 2} Ross advances four assignments of error on appeal. First, he argues that his convictions were not supported by legally sufficient evidence. Second, he contends the trial court abused its discretion by admitting the expert testimony of two prosecution witnesses. Third, he raises an ineffective assistance of counsel claim based on his trial attorney's failure to object to the prosecution's expert testimony. Fourth, he argues that the cumulative effect of the foregoing errors deprived him of a fair trial.
 {¶ 3} The present appeal stems from Dayton police detective Gavin Larremore's observation of Ross standing in front of the Parkside Homes housing complex on the night of March 22, 2001. (Trial Transcript at 119-120). Larremore drove past Ross wearing plain clothes and operating an unmarked police car. As he did so, Ross made eye contact and yelled something unintelligible. (Id. at 120). Larremore then drove a few blocks away and informed other officers that he believed Ross may have been attempting to sell drugs. (Id. at 121). After approximately 10 minutes, the detective returned to Parkside Homes and again made eye contact with Ross, who waived to get his attention. (Id. at 122). Larremore then pulled into a parking lot across the street. Ross approached the detective's car and said, "What are you looking for?" (Id. at 124). When Larremore acted as if he did not understand, Ross stated: "C'mon man. What do you want? You can't be sitting out here. The police is going to see you." (Id.). The detective then said that he wanted "a twenty," which is commonly understood by drug dealers to mean $20 worth of a drug. (Id. at 125). In response, Ross offered to get Larremore some "rock," which is a slang term for crack cocaine. (Id. at 126). Ross then walked into the Parkside Homes complex and returned to the detective's car a few minutes later. (Id.). He reached through the car window and presented Larremore with what appeared to the detective to be two small pieces of crack cocaine. (Id. at 128, 132-134). As the two men negotiated a price for the drugs, a police cruiser drove down a street behind them. (Id. at 135). Upon seeing the cruiser, Ross closed his hand around the cocaine, turned around, and started walking away. (Id.). At that point, Larremore signaled fellow officers, who immediately converged on the parking lot. (Id.). As several marked police cars turned into the lot from different directions, Larremore saw Ross throw the cocaine to the ground. (Id. at 135-137). The officers then arrested Ross and began searching the parking lot. (Id. at 137-138). Despite looking for approximately 20 minutes, Larremore and his companions failed to recover the crack cocaine from the dark parking lot, which was littered with gravel, glass, sand, and other debris. (Id. at 138-139).
 {¶ 4} Ross subsequently was charged with drug trafficking and tampering with evidence. The matter proceeded to trial, and a jury convicted him of both charges. The trial court sentenced him to concurrent prison terms of one year for drug trafficking and two years for tampering with evidence. Ross filed a timely appeal, advancing the assignments of error set forth above.
 {¶ 5} In his first assignment of error, Ross argues that the state presented legally insufficient evidence to support his convictions for drug trafficking and tampering with evidence. When a defendant challenges the sufficiency of the evidence, he is arguing that the state presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v. Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 6} In the present case, Ross first challenges his conviction for tampering with evidence in violation of R.C. § 2921.12(A)(1). That statute provides, in relevant part, that no person, knowing that an official investigation is in progress or is about to be or likely to be instituted, shall conceal anything, with the purpose to impair its availability as evidence in such investigation. On appeal, Ross argues that the record contains insufficient evidence to support a finding that he knew an official investigation was in
 {¶ 7} progress or was about to be or likely to be instituted. He also argues that the record contains insufficient evidence to support a finding that he concealed anything.
 {¶ 8} We find these arguments to be without merit. Viewed in a light most favorable to the prosecution, the record contains sufficient evidence to support a determination that Ross had the requisite knowledge of an official investigation. The record reflects that he was engaged in a drug transaction with Larremore. After observing a marked police car drive past, he began walking away from the detective. (Trial Transcript at 135). At that time, several marked police cars entered the parking lot from different directions, and Ross threw the crack cocaine to the ground. (Id. at 135-137). These facts, if believed, are sufficient to support a finding that Ross knew an official investigation was in progress or was about to be instituted. The record also contains sufficient evidence to support a determination that he concealed crack cocaine. Larremore testified that he watched Ross toss two pieces of crack cocaine in the parking lot upon seeing the approaching police cars. (Id.). This testimony, if believed, is sufficient to support a finding that Ross concealed the cocaine for the purpose of impairing its availability as evidence. State v. Moore (Dec. 7, 2001), Clark App. No. 2001-CA-2; State v. Colquitt (Sept. 24, 1999), Clark App. No. 1998-CA-71.
 {¶ 9} As noted above, Ross also challenges the sufficiency of the evidence to support his conviction for drug trafficking in violation of R.C. § 2925.03(A)(1), which provides that no person shall knowingly sell or offer to sell a controlled substance. In support, Ross first argues that Larremore offered to buy, but that he (Ross) did not offer tosell, crack cocaine. Given that police failed to recover any crack cocaine from the parking lot, he also argues that the state failed to prove the existence of a controlled substance. Finally, he challenges the accuracy of detective Larremore's identification of the discarded drugs as crack cocaine.
 {¶ 10} Once again, we find the foregoing arguments to be unpersuasive. After asking what Larremore wanted, Ross stated that he would get the detective "rock." (Trial Transcript at 126). Ross then left briefly and returned with two pieces of crack cocaine. He identified the quantity as "a thirty dollar piece," which referred to the selling price. (Id. at 128, 134). These facts, if believed, are sufficient to support a finding that Ross offered to sell the crack cocaine. The record also contains sufficient evidence to support a finding that Ross discarded a controlled substance, to wit: crack cocaine. At trial, Larremore testified in some detail about the visual characteristics of crack cocaine. (Id. at 132-133). He also testified that he believed the substance presented by Ross was crack cocaine. (Id. at 133-134). In addition, forensic chemist Brooke Baker testified that crack cocaine is a schedule-two controlled substance. (Id. at 183). This testimony, if believed, is sufficient to support a finding that Ross offered to sell a controlled substance. Finally, Ross' argument that Larremore's testimony was unreliable, and should not have been believed, is misplaced. When reviewing a sufficiency-of-the-evidence argument, the relevant inquiry is whether the evidence, if it is believed, would support a conviction.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 11} In his first assignment of error, Ross also contends that the failure to recover and test the discarded crack cocaine, or to test for residue on his hand, constituted "a violation of his due process rights for the intentional non-preservation of exculpatory, and unique evidence." This argument is meritless. If Ross had wanted police to test the crack cocaine in his hand, he should not have tossed it in a dark, debris-filled parking lot the moment they arrived. In any event, we note that "`unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" State v. Treesh,90 Ohio St.3d 460, 475, 2001-Ohio-4, quoting Arizona v. Youngblood
(1988), 488 U.S. 51, 58. We find no bad faith in the present case, and we overrule Ross' first assignment of error.
 {¶ 12} In his second assignment of error, Ross contends the trial court abused its discretion by admitting the expert testimony of two prosecution witnesses, detective Larremore and forensic chemist Baker. With respect to Larremore, Ross argues that the state failed to qualify the detective as an expert in the visual identification of crack cocaine. With respect to Baker, Ross makes two arguments. First, he contends that the state failed to qualify her as an expert in the field of forensic chemistry and the analysis of narcotics. Second, he asserts that none of her testimony was relevant to any issue at trial.
 {¶ 13} Upon review, we find the foregoing arguments to be unpersuasive. Regarding Larremore's identification of the substance in Ross' hand as crack cocaine, we find no error in the admissibility of this testimony. The qualification of an expert is a matter for determination by the trial court, and rulings with respect to such matters will not be reversed absent an abuse of discretion. State v.Maupin (1975), 42 Ohio St.2d 473, 479. Having reviewed the record, we cannot say that the trial court abused its discretion in finding Larremore qualified to render an opinion as to the identity of the substance at issue.
 {¶ 14} The Ohio Supreme Court has recognized that expert testimony from a sufficiently experienced police officer may be used to establish the identity of a controlled substance.[1] Id. The record before us reflects that Larremore had encountered crack cocaine thousands of times while working as a drug detective. (Trial Transcript at 129, 130). Larremore also estimated that he was more than 95 percent accurate when visually identifying crack cocaine. (Id. at 131-132). The detective also described the appearance of crack cocaine and explained why he believed that the substance in Ross' hand was crack cocaine. In particular, he noted that "[crack cocaine has a very distinctive appearance. And it can be anything from an off white color to a greasy yellow color. Crack cocaine, when it is cooked up, when the powder is cooked, in the process, there are bubbles that form. And it sets in a hardened form; it's then cut. It's cut in irregular rocks; then those rocks are sold." (Id. at 132-133. According to Larremore, "[i]tems that are sold as a substitute for cocaine, which we call fleece, where fake cocaine is being sold, usually [do] not look exactly like crack cocaine. It will be a much smoother surface. It will be a little more regularly shaped. But crack cocaine has a very unique appearance." (Id. at 133). In the detective's opinion, the two "rocks" in Ross' hand had the appearance of crack cocaine, as they "were very irregularly shaped as if they were cut with a razor. They both [had] the little bubble in them and they were both off white, kind of off white color." (Id.). Based on prior experience and what he had seen "many, many times," Larremore testified that he believed Ross possessed true crack cocaine. (Id. at 133). In our view, the trial court properly found detective Larremore qualified to render an expert opinion as to the identity of the substance at issue.[2]
 {¶ 15} In opposition to the foregoing conclusion, Ross insists that the trial court neglected to perform its "gatekeeping" role, as articulated by the U.S. Supreme Court in Daubert v. Merrill DowPharmaceuticals, Inc. (1993), 509 U.S. 579, and Kumho Tire Co. v.Carmichael (1999), 526 U.S. 137. In particular, he contends the trial court failed to ensure that Larremore's "testimony and methodology could be measured against an objective and independent source[.]" Among other things, he notes that the trial court did not inquire into the detective's "theory or technique" of identification. He also notes the absence of evidence showing that Larremore's technique had been subjected to peer review, or that it was generally accepted in the scientific community.
 {¶ 16} Upon review, we find Ross' argument to be without merit. InDaubert, the Court recognized a trial court's important "gatekeeping function" to ensure that evidence is both relevant and reliable.Daubert, supra, at 589. The Daubert Court then identified a non-exclusive list of factors for courts to consider when deciding whether proposed scientific expert testimony is sufficiently "reliable." These factors include: (1) "whether a theory or technique . . . can be `and has been tested'"; (2) "whether the theory or technique has been subjected to peer review or publication"; (3) "the known or potential rate of error"; and (4) "general acceptance." Id. at 593-594.
 {¶ 17} In Kumho, the Court clarified the applicability of the foregoing "Daubert factors" to non-scientific evidence. Therein, the Court reaffirmed that a trial court's gatekeeping function applies toall expert testimony, regardless of whether the testimony is based on scientific, technical or other specialized knowledge. Kumho, supra, at 147-149. The Kumho Court noted, however, that the specific factors enumerated in Daubert will not always apply. In some cases, those factors may be pertinent, whereas in other cases "the relevant reliability concerns may focus upon personal knowledge or experience." Id. at 150; see also Berry v. City of Detroit (6th Cir. 1994), 25 F.3d 1342, 1349
(recognizing that "[t]he distinction between scientific and non-scientific expert testimony is a critical one[,]" and that Daubert is "only of limited help" in assessing expertise grounded in personal experience); United States v. Jones (6th Cir. 1997), 107 F.3d 1147, 1158
(noting that the Daubert factors are not necessarily useful in cases involving expertise derived from practical experience); First TennesseeBank Nat. Ass'n v. Barreto (6th Cir. 2001), 268 F.3d 319, 334-335
(observing that expert opinions formed on the basis of practical experience "do not easily lend themselves to scholarly review or to traditional scientific evaluation").
 {¶ 18} In the present case, Larremore's expertise stemmed from his personal experience as a drug detective. As noted above, such practical experience is often difficult to evaluate using scientific criteria. Consequently, we find no significance in the trial court's failure to inquire into the detective's "theory" of identification. We also find no significance in the state's failure to present evidence showing that Larremore's technique had been subjected to peer review, or that it was generally accepted in the scientific community. Despite the absence of such evidence, the record fully supports a finding that the detective's identification testimony was reliable and admissible, based on his extensive practical experience in the visual identification of crack cocaine.
 {¶ 19} We reach the same conclusion with respect to the testimony of forensic chemist Baker. On appeal, Ross first suggests, without analysis, that her expert testimony lacked an adequate foundation underDaubert and its progeny. Having reviewed the record, we cannot agree. Baker testified in detail as to her qualifications as a forensic chemist. She also testified that she had chemically analyzed suspected narcotics, including crack cocaine, thousands of times. (Trial Transcript at 180). In addition, she explained that she had testified as an expert witness on eight other occasions. Absent a specific argument regarding Baker's qualifications as an expert witness, we find Ross' argument on this point to be unpersuasive.
 {¶ 20} Ross next argues that all of Baker's testimony should have been excluded because it was not relevant to any issue at trial. As the state properly notes, however, it was required to prove that Ross offered to sell a controlled substance. See R.C. § 2925.03(A). At trial, Baker explained the phrase "controlled substance" and testified that crack cocaine is, in fact, a controlled substance. (Trial Transcript at 182-183). Consequently, her testimony was relevant, and we overrule Ross' second assignment of error.
 {¶ 21} In his third assignment of error, Ross raises an ineffective-assistance-of-counsel claim based on his trial attorney's failure to object to the expert testimony discussed above.[3] Given that such testimony was properly admitted, however, this assignment of error necessarily fails. An attorney does not provide deficient representation by failing to object to admissible testimony. Moreover, no prejudice can result from an attorney's failure to object to such testimony. Accordingly, we overrule Ross' third assignment of error.
 {¶ 22} In his fourth assignment of error, Ross contends his convictions should be reversed due to the cumulative effect of the foregoing alleged errors. As noted above, however, Ross' first three assignments of error lack merit. His convictions are supported by legally sufficient evidence. The trial court did not err in admitting expert testimony offered by the prosecution, and defense counsel did not provide ineffective assistance by failing to object to the prosecution's expert testimony. As a result, no cumulative error deprived Ross of his right to a fair trial.
 {¶ 23} In a final argument, however, Ross again suggests that the Dayton Police Department's failure to preserve the crack cocaine at issue violated his due process rights as well as R.C. § 2925.51(E), which provides, in relevant part, that "[a]ny person who is accused of a violation of this chapter . . . is entitled, upon written request made to the prosecuting attorney, to have a portion of the substance that is . . . the basis of the alleged violation preserved for the benefit of independent analysis[.]"
 {¶ 24} Upon review, we find the foregoing argument to be unpersuasive. With respect to R.C. § 2925.51(E), Ross' argument fails for at least two reasons. First, he has not cited any evidence establishing that he made a written request, as required under the statute. Second, detective Larremore and the other officers did not recover any crack cocaine and, therefore, could not possibly have "preserved" the evidence for analysis. With respect to the due process issue, we rejected Ross' argument in our discussion of his first assignment of error, supra. Consequently, Ross' fourth assignment of error is overruled, and the judgment of the Montgomery County Court of Common Pleas is hereby affirmed.
Judgment Affirmed.
WOLFF, P.J., and FAIN, J., concur.
[1] Although Maupin and several other Ohio cases have discussed the visual identification of marijuana, we have not found, and the parties have not cited, any Ohio cases discussing the admissibility of testimony in the prosecution's case-in-chief concerning the visual identification of crack cocaine. We note, however, that other state and federal courts generally have found such testimony to be admissible. See, e.g., UnitedStates v. Paiva (1st Cir. 1989), 892 F.2d 148, 156-157 (citing cases for the proposition that an individual "may be competent, based on past experience and personal knowledge and observation," to opine that a substance is cocaine); Brooks v. State (Fl. 2002), 762 So.2d 879, 892-894
(recognizing that personal experience may qualify an individual to testify that a substance is crack cocaine). Such testimony is admissible because crack cocaine "usually has a distinctive appearance and form" that makes it easily recognizable to a person who is experienced with the drug. United States v. Brown (8th Cir. 1998), 156 F.3d 813, 816.
[2] Although the trial court found Larremore qualified to render an expert opinion under Evid.R. 702, we note that the Ohio Supreme Court has even approved the use of lay witness testimony to establish the identity of a suspected controlled substance. In State v. McKee, 91 Ohio St.3d 292,297, 2001-Ohio-41, the court held that "the experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established. This meets the requirements of Evid.R. 701. It is testimony rationally based on a person's perceptions and helpful to a clear understanding of a fact in issue." In light of McKee, we question whether it was even necessary for the trial court to qualify Larremore as an expert witness, given his substantial experience and knowledge about the appearance of crack cocaine.
[3] A review of the record reveals that defense counsel initially did object to the admissibility of Larremore's expert testimony regarding his visual identification of the crack cocaine. (Trial Transcript at 129).