**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220326-U

Order filed December 9, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0326 Circuit No. 19-CF-1458 |
| DEVIN MONTGOMERY, | ) ) ) | Honorable Edward A. Burmila Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Peterson concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1       *Held*:  (1) The State presented sufficient evidence to convict the defendant of constructive possession of a firearm. (2) The UUWF statute is not unconstitutional, nor was it unconstitutionally applied to the defendant. (3) The defendant's convictions violated the one-act, one-crime doctrine.

¶ 2       The defendant, Devin Montgomery, appeals his convictions for unlawful use of a weapon

by a felon (UUWF), arguing (1) the evidence was insufficient to prove he possessed a weapon,

(2) the statute under which he was convicted is unconstitutional both facially and as applied to him, and (3) his convictions violated the one-act, one-crime doctrine.

¶ 3                                    I. BACKGROUND

¶ 4        The defendant was charged by indictment with four counts of UUWF (720 ILCS 5/24-1.1(a) (West 2018)), alleging that he possessed a .357 revolver, ammunition for the .357 revolver, and was both on mandatory supervised release (MSR) at the time of the offense (an aggravating factor under section 24-1.1(e) of the Criminal Code of 2012 (Code)) (*id.* § 24-1.1(e)) and had been previously convicted of UUWF (a separate aggravating factor under section 24-1.1(e)).

¶ 5        The case proceeded to a bench trial on September 23, 2021. The State called Officers Kyle Killian and Ryan Killian. The evidence established that on August 3, 2019, the defendant was arrested after officers observed him fail to come to a complete stop at a stop sign. After the defendant pulled his vehicle over, he and the vehicle's passenger exited and fled. The defendant was apprehended by Officer Kyle Killian, who placed the defendant in the rear of his squad car. Officer Ryan Killian apprehended the passenger, then searched the vehicle and recovered two firearms. A loaded .357 revolver was found on the front driver's side floorboard and a 9-millimeter handgun was located on the front passenger side floorboard. Ryan stated that he could see the revolver in "plain view" as soon as he opened the driver's side door. He clarified that it was "a little bit closer towards the seat of the vehicle." He also recovered the defendant's phone from the vehicle.

¶ 6        Detectives subsequently performed a search of the defendant's phone, which revealed a text message conversation between the defendant and a person identified in the defendant's contacts as "Twin" on July 27, 2019. Twin sent the defendant a photograph of a .357 revolver along with two other firearms and the defendant responded, "[h]ell yeah need tht [*sic*]." Twin

2

agreed to bring the firearms to the defendant. A separate text message conversation occurred on June 13, 2019, wherein the defendant told an unknown individual that he was looking to purchase a gun. He indicated that he was seeking to purchase "a 9 or 45 glocks [*sic*]," and that he already had a .357 revolver.

¶ 7 The defendant rested without testifying, and the circuit court found the defendant guilty on all four counts. In a timely posttrial motion, the defendant challenged the sufficiency of the evidence, arguing that the State failed to prove he possessed the revolver and its ammunition. The motion was denied.

¶ 8 At a sentencing hearing, a presentence investigation (PSI) was prepared, which disclosed that the defendant had been convicted of unlawful use of a weapon as a juvenile. The PSI indicated that the offense was a felony but did not disclose which statute the defendant violated. The PSI revealed that, as an adult, the defendant had been convicted of numerous misdemeanor and traffic violations, as well as five felonies: aggravated battery to a pregnant person (720 ILCS 5/12-4(b)(11) (West 2008)), two separate charges of UUWF (720 ILCS 5/24-1.1(a) (West 2012)), and aggravated battery to a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2016)). The defendant was sentenced to 4½ years' imprisonment.

¶ 9                                      II. ANALYSIS

¶ 10 On appeal, the defendant argues (1) the State's evidence was insufficient to establish that he constructively possessed a firearm, (2) the statute under which he was convicted is unconstitutional, both facially and as applied to him, under the United States Constitution and the Illinois Constitution, and (3) his convictions violated the one-act, one-crime doctrine. We address each argument in turn.

¶ 11                              A. Constructive Possession

3

¶ 12 The defendant contends the State failed to prove his guilt beyond a reasonable doubt because it failed to establish he had constructive possession of the revolver located on the driver's side floorboard. He argues there was no evidence suggesting he knew the gun was in the vehicle and no fingerprint evidence linking him to the firearm. The defendant further points out that he was not the only occupant of the vehicle, and the vehicle's passenger may have placed the gun on the floorboard after the defendant exited the vehicle.

¶ 13 In a challenge to the sufficiency of the evidence, we must determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We will not retry the defendant. *People v. Jones*, 2023 IL 127810, ¶ 28. Neither will we substitute our judgment for that of the trier of fact on issues involving witness credibility and the weight of evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). We draw all reasonable inferences from the record in favor of the prosecution. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). A criminal conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Brown*, 2013 IL 114196, ¶ 48.

¶ 14 To obtain a conviction for UUWF, the State must prove the defendant (1) has a prior felony conviction, and (2) knowingly possessed a weapon or ammunition. *Jones*, 2023 IL 127810, ¶ 29; 720 ILCS 5/24-1.1(a) (West 2018). The State further alleged as enhancing factors that the defendant (1) was on MSR at the time of the offense, and (2) had a prior conviction for UUWF. The defendant does not dispute that he has a prior felony conviction, that he was on MSR at the time of the offense, or that he has a prior conviction for UUWF. Instead, the defendant argues he did not knowingly possess a firearm or ammunition.

¶ 15    "Where possession is an element of a charged offense, and a defendant is not found in actual possession, the State must instead prove constructive possession." *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 27. To establish constructive possession, the State is required to prove the defendant (1) knew the contraband was present, and (2) exercised immediate and exclusive control over the area where the contraband was found. *People v. Wise*, 2021 IL 125392, ¶ 28. Proof that the defendant had control over the premises where the contraband is located gives rise to an inference of knowledge and possession of that contraband. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). "Knowledge may be demonstrated by evidence of the defendant's " 'acts[, declarations,] or conduct, from which it can be inferred that he knew the contraband existed in the place where it was found.' " *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 40 (quoting *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 24). Whether the defendant knowingly possessed a firearm and had control over its location are questions of fact to be determined by the trier of fact. *Jones*, 2023 IL 127810, ¶ 32.

¶ 16    Factors from which knowledge may be inferred include: "(1) the visibility of the weapon from defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon." *People v. Bailey*, 333 Ill. App. 3d 888, 892 (2002). Courts may also consider whether the defendant had a possessory or ownership interest in the weapon or in the automobile in which the weapon was found. *Id.* The presence of multiple people in a vehicle does not diminish the exclusivity of the defendant's control over a firearm. See *People v. Hill*, 226 Ill. App. 3d 670, 673 (1992) (" 'When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the

5

defendant, but rather a situation of joint possession.' " (Emphasis omitted.) (quoting *People v. Williams*, 98 Ill. App. 3d 844, 849 (1981)).

¶ 17 Here, reviewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found the defendant had exclusive control over the area where the firearm was found. The evidence presented at trial established the defendant exited the vehicle from the driver's side and the firearm was located on the driver's side floorboard immediately thereafter. The firearm was in plain view when the door was opened. The defendant's flight also supports the inference that he knew there was contraband in the vehicle. See *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011).

¶ 18 The defendant insists the gun may have been placed on the driver's side floorboard by the passenger without his knowledge. However, where the facts of the case reasonably lead to either of two inferences, we will not substitute our judgment for that of a trier of fact unless the inference accepted by the trier of fact is inherently impossible or unreasonable. *People v. Lemke*, 349 Ill. App. 3d 391, 398 (2004). "[T]he trier of fact is not required to search for a series of possible explanations compatible with innocence to elevate them to the status of reasonable doubt." *People v. De Angelo*, 50 Ill. App. 3d 848, 852 (1977). We do not find it unreasonable for the trier of fact to have inferred that the firearm located on the driver's side floorboard was placed there by the driver of the vehicle. See *People v. Cook*, 2021 IL App (3d) 190243, ¶ 28 (constructive possession found where a firearm was located on the backseat floorboard and the defendant was one of several backseat passengers).

¶ 19 Further, text messages recovered from the defendant's phone suggested he either already possessed a .357 revolver or wanted to acquire one in the two months prior to his arrest. These messages, in conjunction with the location of the firearm, suggest the defendant was aware of the

6

firearm's presence in the vehicle and exercised exclusive control over it. Accordingly, we hold that the State met its burden to establish constructive possession of the .357 revolver and the ammunition contained within it.

¶ 20                                    B. Constitutionality of UUWF

¶ 21        Section 24-1.1 of the Code prohibits the possession of firearms by any person previously convicted of any felony. 720 ILCS 5/24-1.1(a) (West 2018). The defendant challenges the constitutionality of section 24-1.1, arguing that it improperly burdens the right to keep and bear arms as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II) and article I, section 22 of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). The defendant contends the statute is unconstitutional both facially and as applied to him under the test announced by the United States Supreme Court in *New York State Rifle & Pistol Ass'n, Inc., v. Bruen*, 597 U.S. 1, 17 (2022).

¶ 22        We review a statute's constitutionality *de novo*. *Ross*, 407 Ill. App. 3d at 938. Statutes are presumed constitutional, and "[t]he party challenging the constitutionality of a statute carries the burden of proving that the statute is unconstitutional." *People v. Hollins*, 2012 IL 112754, ¶ 13. Courts "have a duty to construe the statute in a manner that upholds the statute's validity and constitutionality, if it can reasonably be done." *Id.* "A party raising a facial challenge to a statute faces a particularly heavy burden." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

¶ 23        The distinction between an as-applied challenge and a facial challenge "goes to the breadth of the remedy employed by the Court." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010). An as-applied challenge requires a showing that the statute violates the constitution as it applies to the defendant's particular facts and circumstances, whereas a facial challenge requires a showing that the statute is unconstitutional under any set of facts. *People v.*

7

*Thompson*, 2015 IL 118151, ¶ 36. A facial constitutional challenge to a statute may be raised at any time. *Ross*, 407 Ill. App. 3d at 938. However, as a general rule, defendants must bring as-applied constitutional challenges to the circuit court before raising them for the first time on appeal. *Thompson*, 2015 IL 118151, ¶ 37.

¶ 24 Therefore, before we address the merits of the defendant's claims, we must consider the State's argument that the defendant failed to raise this issue in the circuit court, thereby barring him from raising an as-applied challenge for the first time on appeal. The defendant concedes he did not raise the issue previously but argues the record is sufficiently developed for us to review his claim.

¶ 25 As-applied constitutional challenges are dependent on the particular facts and circumstances of the individual defendant's case, and it is "paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* Nevertheless, where all relevant facts and circumstances are contained in the record, the claim may be raised and reviewed on appeal, even in the absence of a prior evidentiary hearing. *People v. Holman*, 2017 IL 120655, ¶¶ 29-32, *overruled on other grounds by People v. Wilson*, 2023 IL 127666, ¶ 42. And where, as here, the record contains the defendant's criminal history and no additional information would be gained by holding an evidentiary hearing below, we may consider an as-applied challenge under the second amendment. See *Brooks*, 2023 IL App (1st) 200435, ¶ 59 (considering an as-applied challenge to the armed habitual criminal statute for the first time on appeal). Therefore, we will consider the defendant's as-applied challenge.

¶ 26                                   1. United States Constitution

¶ 27 The defendant contends that section 24-1.1 of the Code is facially unconstitutional because it imposes a permanent ban on the possession of firearms by felons, and there is no history and

8

tradition of imposing such restrictions in America as required by *Bruen*, 597 U.S. at 24. The defendant further contends that even if section 24-1.1 is not facially unconstitutional, it is unconstitutional as applied to him because he was not acting dangerously or violating the law at the time of his arrest.

¶ 28 The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 29 In 2022, *Bruen* clarified the proper standard for lower courts to use when analyzing whether regulations unconstitutionally burden the second amendment. *Bruen*, 597 U.S. at 17. *Bruen* eliminated the means-end scrutiny previously utilized by reviewing courts and instead announced a simpler two-part analysis focused on history and tradition:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Id.* at 24 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961)).

¶ 30 *Bruen*'s majority went on to instruct lower courts how to evaluate laws using a historical framework. *Id.* at 26. First, if the challenged regulation "addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 26-27. However, "other cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 27.

¶ 31    When the second amendment's historically fixed meaning must be applied to a new circumstance, the courts must conduct a historical inquiry that involves reasoning by analogy. *Id.* at 28. In pursuing such an inquiry, "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." (Emphases in original.) *Id.* at 30.

> "While we do not now provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment, we do think that *Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense. As we stated in *Heller* and repeated in *McDonald*, 'individual self-defense is "the *central component*" of the Second Amendment right.' " (Emphasis in original.) *Id.* at 29 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010), quoting *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008)).

¶ 32    Following *Bruen*'s issuance, many courts have fielded challenges to state and federal statutes affecting the right to bear arms. Our review of relevant cases reveals numerous federal district court cases applying *Bruen*'s analysis, the vast majority of which have upheld the constitutionality of the federal statute prohibiting felons from possessing firearms. See, *e.g.*, *United States v. Kays*, 624 F. Supp. 3d 1262, 1264-65 (W.D. Okla. 2022); *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023); *United States v. Robinson*, 680 F. Supp. 3d 737, 740-41 (N.D. Tex. June 29, 2023). We also note that during the pendency of this appeal, the U.S. Supreme Court issued a decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), in which it

upheld a federal statute prohibiting individuals subject to a domestic violence restraining order from possessing a firearm.

¶ 33    Courts in Illinois have also considered the constitutionality of prohibiting felons from possessing firearms, whether through the UUWF statute or through the armed habitual criminal statute (720 ILCS 5/24-1.7(a) (West 2016)). See, *e.g.*, *Brooks*, 2023 IL App (1st) 200435, ¶ 55 (considering the constitutionality of the armed habitual criminal statute as applied to the defendant); *People v. Baker*, 2023 IL App (1st) 220328, ¶ 33 (considering an as-applied challenge to the UUWF statute); *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 17 (same); *People v. Travis*, 2024 IL App (3d) 230113, ¶ 16 (considering the constitutionality of both the armed habitual criminal and UUWF statutes). These statutes have been found to pass constitutional muster following *Bruen*'s issuance.

¶ 34    According to the framework articulated in *Bruen*, the first question is whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If so, then "the Constitution presumptively protects that conduct," and it falls on the government to justify its regulation as consistent with America's historical tradition of firearm regulation. The defendant was charged with possessing a revolver, conduct that falls squarely within the ambit of the second amendment, and the possession of a firearm is precisely the conduct section 24-1.1 of the Code criminalizes. *United States v. Collette*, 630 F. Supp. 3d 841, 844 (W.D. Tex. 2022). Although the defendant's status as a felon is also an element of section 24-1.1, *Bruen* makes no mention of the status or circumstances surrounding an individual's conduct, and neither does the second amendment. We decline to read additional language into this relatively straightforward first step. *Id.* ("*Bruen*'s first step asks a strictly textual question with only one answer: the Second Amendment's plain text covers possession of a firearm").

¶ 35    Having found that the first step of *Bruen*'s test is satisfied, we now determine whether section 24-1.1 of the Code is rooted in the nation's history and tradition of firearms regulation. *Bruen*, 597 U.S. at 24. We addressed this question most recently in *Travis*, where, after a review of the relevant history, we found numerous regulations comprising a history and tradition of "identifying dangerous individuals and disarming them." *Travis*, 2024 IL App (3d) 230113, ¶ 33. We hold, as we did in *Travis*, that such regulations are relevant " 'historical analogue[s]' " to section 24-1.1. *Id.* ¶ 32 (quoting *Bruen*, 597 U.S. at 30). The disarmament of felons follows the principle that "[r]easonable restrictions [on the right to bear arms] may be imposed so long as they are consistent with our nation's historical tradition of firearm regulations." *Sinnissippi Rod & Gun Club, Inc. v. Raoul*, 2024 IL App (3d) 210073, ¶ 119 (Holdridge, J., dissenting). We therefore find section 24-1.1 facially constitutional.

¶ 36    The defendant also raises an as-applied challenge to section 24-1.1, arguing that he was not acting dangerously "at the time of his offense." Citing Justice Barrett's dissent in *Kanter*, the defendant asserts that the historical regulation of firearms focused on "violent dangerousness" rather than mere "dangerousness," and that neither his actions nor his criminal history place him "within the class of persons that founding-era firearms laws would have prevented from having a gun." See *Kanter*, 919 F.3d at 457-58 (Barrett, J., dissenting).

¶ 37    The fact that the defendant was not acting violently at the time of his offense is irrelevant to the question of whether he has been previously adjudicated a felon and is additionally irrelevant to whether the defendant is more generally dangerous. A violation of section 24-1.1 requires only that the defendant (1) has a prior felony conviction, and (2) possesses a firearm. See 720 ILCS 5/24-1.1(a) (West 2018). It does not require that the defendant was acting unlawfully or violently at the time of his arrest, and we cannot discern any reason why the defendant's lawfulness or

unlawfulness at the time of arrest should affect whether the State is legally permitted to disarm him based on his criminal history.

¶ 38       Moreover, we need not decide whether the constitution requires a felon to be violent or dangerous to resolve the defendant's as-applied challenge because the defendant's criminal history reveals that he *is* a violent felon. The defendant has been convicted of at least two violent felonies, namely two separate batteries. To be convicted of any battery, the State must establish that the defendant "knowingly without legal justification by any means (1) cause[d] bodily harm to an individual or (2) [made] physical contact of an insulting or provoking nature with an individual." *Id.* § 12-3. A battery is a forcible felony, which is a "felony which involves the use or threat of physical force or violence against any individual." *Id.* § 2-8. In defining violent felonies, the United States Supreme Court has held that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." (Emphasis in original.) *Johnson v. United States*, 559 U.S. 133, 140 (2010).

¶ 39       Thus, the defendant has been convicted of committing violent acts, and he represents precisely the type of person the government has historically and traditionally sought to disarm. See *Kanter*, 919 F.3d at 467 (Barrett, J., dissenting); *Rahimi*, 144 S. Ct. at 1900-1901. Accordingly, section 24-1.1 may be constitutionally applied to the defendant.

¶ 40                                    2. Illinois Constitution

¶ 41       The defendant next claims that section 24-1.1 of the Code violates article I, section 22 of the Illinois Constitution facially and as applied to him. The defendant argues that the Illinois Constitution provides greater protection than the second amendment by "expanding the group of persons subject to its protections." The defendant suggests that the phrase "the people" has been interpreted by some courts as a term of art to refer only to law-abiding citizens. See, *e.g.*, *United*

13

*States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) ("felons are categorically different from the individuals who have a fundamental right to bear arms"). However, the Illinois Constitution does not contain the phrase "the people," and so, the defendant contends, its scope should be interpreted more broadly.

¶ 42 An identical argument was raised in *Travis*, 2024 IL App (3d) 230113, ¶ 39. There, we held that article I, section 22 of the Illinois Constitution applied to the defendant, but the defendant "present[ed] no compelling argument that Illinois has elected to impose greater protections" than the federal constitution. *Id*. ¶ 42. As discussed above, section 24-1.1 does not unconstitutionally impinge on the second amendment. *Supra* ¶ 35. Neither does the Illinois Constitution prevent the legislature from criminalizing the behavior described in 24-1.1. Indeed, as we observed in *Travis*, the UUWF statute is a "proper exercise of the state's police power, which allows the state to exert, through legislation, control over the dangers posed by firearms and the people who might use them to do harm." *Travis*, 2024 IL App (3d) 230113, ¶ 42. And, as noted above, the defendant's violent criminal history places him in precisely the category of people the state may properly seek to regulate. *Supra* ¶ 39. Thus, his facial and as-applied challenges must fail.

¶ 43 C. One-Act, One-Crime Violation

¶ 44 The defendant lastly contends that his convictions violate the one-act, one-crime doctrine. The defendant's act of possessing a .357 revolver resulted in two convictions—UUWF while the defendant was on MSR and UUWF following a prior conviction for UUWF. The defendant's separate act of possessing ammunition for the .357 revolver resulted in two more convictions for the same two offenses. The State concedes that a violation of the one-act, one-crime doctrine occurred, and we accept the State's concession.

¶ 45 The one-act, one-crime doctrine prohibits convictions based on the same physical act or acts. *People v. Artis*, 232 Ill. 2d 156, 161 (2009). When two or more convictions are based on a single act, the sentence imposed for the less serious offense should be vacated. *Id.* at 170. To determine which offense is more serious, courts generally compare the relative punishments prescribed by the legislature. *Id.* Where, as here, the punishments are identical, courts look to other factors, such as the mental states required to commit each offense. *Id.* Where a reviewing court cannot determine which conviction is more serious, the cause will be remanded to the circuit court for that determination. *Id.*

¶ 46 In this case, the defendant was convicted of four offenses for committing two separate physical acts: (1) possessing a .357 revolver, and (2) possessing ammunition for the .357 revolver. Our supreme court has instructed that the possession of a weapon and the possession of ammunition for that weapon constitute two separate and distinct acts for the purposes of the one-act, one-crime doctrine. *People v. Almond*, 2015 IL 113817, ¶ 48. The defendant was charged with four offenses because he satisfied two of the aggravating factors described under section 24-1.1(e), namely that he was on MSR at the time of the offense, and that he had a prior conviction for UUWF. When the defendant was convicted on all four counts, two violations of the one-act, one-crime doctrine occurred. The defendant can only be convicted once for possessing the .357 revolver and once for possessing the ammunition. We must therefore determine which two convictions must be vacated and which will be allowed to stand for sentencing purposes. See *Artis*, 232 Ill. 2d at 161.

¶ 47 The punishments are identical: each aggravating factor elevates the UUWF charge from a Class 3 felony to a Class 2 felony and carries a sentence of not less than 3 years and not more than 14 years' imprisonment. Each offense requires the same mental state (knowledge) for its

15

commission. 720 ILCS 5/24-1.1(a) (West 2018). We are therefore unable to determine which of the two offenses is more serious for the purposes of the one-act, one-crime doctrine, and we remand this case to the circuit court to make that determination. See *Artis*, 232 Ill. 2d at 177. The circuit court is directed to determine which offenses are more serious, vacate the less serious counts, and resentence the defendant on one count each of possession of a revolver and possession of ammunition.

¶ 48                                    III. CONCLUSION

¶ 49        The judgment of the circuit court of Will County is affirmed in part and remanded with instructions.

¶ 50        Affirmed in part and remanded with instructions.

¶ 51        PRESIDING JUSTICE McDADE, dissenting:

¶ 52        I respectfully dissent from the majority's decision. Instead, I would find that Illinois firearm dispossession statutes are unconstitutional where they require a categorical ban on firearm ownership for all felons, regardless of whether the felony convictions were violent in nature.

¶ 53        Defendant in this case was convicted of UUWF (720 ILCS 5/24-1.1(a) (West 2018)) for possessing a firearm and firearm ammunition after having "been convicted of a felony under the laws of this State or any other jurisdiction."

¶ 54        As written, Illinois law prohibits gun possession by felons, regardless of the predicate offense. However, there are many felony offenses that are nonviolent, including unlawful or syndicated gambling (720 ILCS 5/28-1(c), 28-1.1(f) (West 2022)), bribery (*id.* §§ 29-2, 29A-3(b)), money laundering (*id.* § 29B-1(c)), perjury (*id.* § 32-2(e)), bid-rigging (*id.* § 33E-3), receiving or offering kickbacks (*id.* § 33E-7(c)), flag desecration (*id.* § 49-1(e)), and

16

eavesdropping (*id.* § 14-4), among many others. To say that anyone convicted of any of these nonviolent offenses is too dangerous to possess a firearm is unreasonable. See *Britt v. State*, 681 S.E.2d 320, 323 (N.C. 2009) (finding it "unreasonable to assert that a nonviolent citizen \*\*\* is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety"). "[N]onviolent felons are no more prone to gun violence than law-abiding citizens, and should have the same right to use armed self-defense." Conrad Kahn, *Challenging the Federal Prohibition on Gun Possession by Nonviolent Felons*, 55 S. Tex. L. Rev. 113, 131 (2013); see also C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 695-96 (2009) ("In 2004, domestic diva Martha Stewart was convicted of obstruction of justice, making false statements, and two counts of conspiracy in connection with dubious stock transactions. Although sentenced to only five months in jail plus a period of supervised release, she risked a much harsher punishment. Because she was convicted of a crime punishable by more than a year in prison, federal law bans her from having any gun. \*\*\* Is the public safer now that Martha Stewart is completely and permanently disarmed?").

¶ 55 Moreover, while there is historical precedence for disarming dangerous and violent individuals, there is no historical analogue for disarming nonviolent offenders.

"Early twentieth-century practice reflected the traditions of previous centuries throughout American history: violent or otherwise dangerous persons were sometimes disarmed, but peaceable citizens—even if not necessarily law-abiding—were not. At Massachusetts's ratifying convention, Samuel Adams proposed an amendment guaranteeing that 'the said constitution be never construed…to prevent the people of the United States who are peaceable citizens, from keeping their own arms.' American tradition reflects the right Adams

17

envisioned." Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 274-75 (2020). Previous historical laws even specifically allowed nonviolent felons to retain their firearms. See *id.* at 284-85. "Therefore, firearm prohibitions on peaceable citizens contradict the original understanding of the Second Amendment and are thus unconstitutional." *Id.* at 286.

¶ 56    As the majority notes, the United States Supreme Court recently issued a decision in *Rahimi*, 602 U.S. ___, 144 S. Ct. 1889. *Rahimi* supports my conclusion. In that case the Supreme Court stated that, "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at ___, 144 S. Ct. at 1896. The Court conducted a detailed historical analysis of firearm laws and came to the conclusion that, "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at ___, 144 S. Ct. at 1901. Therefore, "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at ___, 144 S. Ct. at 1902. In so deciding, the Court rejected the argument that Rahimi could be disarmed because he was not "responsible." *Id.* at ___, 144 S. Ct. at 1903. As expounded upon by the dissent,

> "[The Government] argues that the Second Amendment allows Congress to disarm anyone who is not 'responsible' and 'law-abiding.' Not a single Member of the Court adopts the Government's theory. Indeed, the Court disposes of it in half a page—and for good reason. [Citation.] The Government's argument lacks any basis in our precedents and would eviscerate the Second Amendment altogether." *Id.* at ___, 144 S. Ct. at 1944 (Thomas, J., dissenting).

18

Thus, as pointed out by the Court, our nation's firearm regulations have focused not on whether a person was law abiding, but on whether they were dangerous and threatened harm to others. Those individuals who have been convicted of nonviolent felony offenses do not fit into this category.

¶ 57     Because Illinois law dictates a categorical, permanent ban on firearm possession for all felons, regardless of the person's dangerousness, I would find that it is facially unconstitutional as it is at odds with the traditional conception of the second amendment. Therefore, I would reverse defendant's UUWF convictions.